# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Issued March 10, 2023

No. 22-1097

ALI HAMZA AHMAD SULIMAN AL BAHLUL,
PETITIONER

v.

UNITED STATES OF AMERICA,
RESPONDENT

———

Consolidated with 22-1173

———

On Motion to Disqualify

———

KATSAS, *Circuit Judge*:  The Department of Defense has detained Ali Hamza Ahmad Suliman al Bahlul at Guantanamo Bay, Cuba for over two decades.  In 2008, a military commission convicted Bahlul of conspiracy to commit various war crimes.  He now seeks judicial review of his ensuing life sentence.  Bahlul has moved to disqualify me based on my involvement in other Guantanamo Bay detainee litigation while serving in the Department of Justice between 2001 and 2009.  Bahlul cites my appearance as government counsel in a habeas action brought by him and other Guantanamo detainees,

2

my supervisory responsibilities at DOJ, and the recusal
decisions of other senior DOJ officials with whom I served.

Section 455 of Title 28 establishes disqualification
standards for federal judges.  Section 455(b) lists five specific
circumstances requiring disqualification.  One applies if the
judge, in former government employment, "participated as
counsel, adviser or material witness concerning the proceeding
or expressed an opinion concerning the merits of the particular
case in controversy."  28 U.S.C. § 455(b)(3).  Another applies
if the judge has "personal knowledge of disputed evidentiary
facts concerning the proceeding."  *Id.* § 455(b)(1).  In addition,
section 455(a) requires disqualification in any proceeding
where the judge's "impartiality might reasonably be
questioned."  *Id.* § 455(a).  The statute defines "proceeding" to
include "pretrial, trial, appellate review, or other stages of
litigation."  *Id.* § 455(d)(1).  The Code of Conduct for United
States Judges imposes the same requirements.  Canon 3C(1),
3C(1)(a), 3C(1)(e).

Bahlul cites these provisions, and a handful of cases
applying them, for the general proposition that a judge "may
not hear a case in which he previously played any role."  *Cobell
v. Norton*, 334 F.3d 1128, 1144 (D.C. Cir. 2003).  These
decisions further indicate that a judge may not hear a case
raising a collateral attack on another case where the judge
played any role.  *See Williams v. Pennsylvania*, 579 U.S. 1, 10–
11 (2016); *Clemmons v. Wolfe*, 377 F.3d 322, 326 (3d Cir.
2004); *Rice v. McKenzie*, 581 F.2d 1114, 1117 (4th Cir. 1978).
They also indicate that a judge who previously headed a DOJ
litigating component—such as a former United States
Attorney—may not hear any case over which the judge had
supervisory responsibility, regardless of whether he was
personally involved in it.  *See United States v. Herrera-Valdez*,
826 F.3d 912, 919 (7th Cir. 2016); *United States v. Amerine*,

3

411 F.2d 1130, 1133 (6th Cir. 1969). Of course, I have no quarrel with any of these settled principles. And that is why I have recused myself from all Guantanamo detainee litigation that I was personally involved in during my tenure at DOJ, as well as from all Guantanamo detainee litigation handled by the Civil Division while I supervised it, either as Principal Deputy Associate Attorney General (from 2006 to 2008) or as Assistant Attorney General (from 2008 to 2009).

In this proceeding, Bahlul seeks review of a life sentence imposed after his conviction by a military commission convened under the Military Commissions Act of 2006, Pub. L. No. 109-366, 120 Stat. 2600. The Department of Defense handled Bahlul's prosecution, not the Civil Division or any other DOJ component. And while DOJ has defended Bahlul's conviction and sentence before this Court, that task falls with the National Security Division, in which I never served and over which I never had supervisory authority. Also, Bahlul did not file his first petition for review in this Court until September 2011—more than 2.5 years after I left DOJ. In sum, during my time at DOJ, I never appeared as counsel in either Bahlul's underlying prosecution or the ensuing proceedings for judicial review. I never supervised either the prosecution or the review proceedings. I never expressed an opinion on the merits of the prosecution or the review proceedings. And I gained no knowledge of disputed evidentiary facts regarding the prosecution or the review proceedings.

Bahlul contends that disqualification is warranted because I appeared as government counsel in *Al Jayfi v. Bush*, a habeas action filed on behalf of Bahlul and five other Guantanamo detainees. But this proceeding is not that one, and it involves no direct, collateral, or any other review of that case. *Jayfi* challenged the preventive detention of aliens held as enemy combatants at Guantanamo Bay. *See* Petition for Writs of

4

Habeas Corpus, *Al Jayfi v. Bush*, No. 05-cv-2104 (D.D.C. Oct. 27, 2005), ECF No. 1. This case, in contrast, involves detention imposed as punishment for a criminal conviction. *Jayfi* also challenged the lawfulness of military commissions convened under a 2001 presidential order. *See* Detention, Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism, 66 Fed. Reg. 57,833 (Nov. 13, 2001); Supplemental Petition of Ali Hamza Ahmad Suliman Bahlool for Writ of Habeas Corpus and Complaint for Injunctive, Declaratory and Other Relief, *Al Jayfi v. Bush*, No. 05-cv-2104 (D.D.C. Dec. 14, 2005), ECF No. 12. At the time, Bahlul was being prosecuted before such a commission, but it was disbanded after the Supreme Court's decision in *Hamdan v. Rumsfeld*, 548 U.S. 557 (2006). In contrast, this case involves a conviction by a tribunal convened under the Military Commissions Act of 2006, which restructured the commissions after *Hamdan*. *Jayfi* produced one interlocutory appeal while I had supervisory authority over the Civil Division, *Al Jayfi v. Obama*, No. 08-5306. It involved the question whether the government must provide advance notice before transferring a detainee out of Guantanamo Bay, an issue resolved favorably to the government in *Kiyemba v. Obama*, 561 F.3d 509 (D.C. Cir. 2009). This case bears no relationship to that question. Finally, *Jayfi* presented no occasion for me—or any other DOJ lawyer—to learn of facts relevant to Bahlul's prosecution. Like the other Guantanamo habeas cases, *Jayfi* was stayed pending resolution of the threshold question whether habeas corpus jurisdiction extends to aliens held as enemy combatants at Guantanamo Bay. *See Al Jayfi v. Bush*, No. 05-cv-2104 (D.D.C. Jan. 11, 2006), ECF No. 23. Shortly after *Boumediene v. Bush*, 553 U.S. 723 (2008), held that habeas jurisdiction does extend to the Guantanamo detainees, Bahlul withdrew from the *Jayfi* litigation—before the government had occasion to file a factual return seeking to justify his detention. *See Al Jayfi v. Bush*, No. 05-cv-2104 (D.D.C. Oct. 24, 2008), ECF No. 84. So,

5

I did not learn any facts bearing on Bahlul's prosecution or on this Court's review of his conviction and sentence.

Bahlul urges me to disqualify myself because Justice Gorsuch and Chief Judge Srinivasan, who served with me at DOJ, disqualified themselves in earlier iterations of this case. But each of us had different work portfolios at the Department. Chief Judge Srinivasan served as Principal Deputy Solicitor General in early 2013, when the Solicitor General authorized the National Security Division to seek en banc at an earlier stage of this proceeding. *See* Petition of the U.S. for Rehearing En Banc, *Al Bahlul v. United States*, No. 11-1324 (March 5, 2013). And Justice Gorsuch, while serving as Principal Deputy Associate Attorney General, reportedly was involved in work on the Detainee Treatment Act of 2005, Pub. L. No. 109-148, 119 Stat. 2739. *See* Savage, *Newly Public Emails Hint at Gorsuch's View of Presidential Power*, N.Y. Times (Mar. 18, 2017). Such work may have involved assessing factual claims that the Guantanamo detainees were mistreated, for section 1002(a) of the Act significantly restricted the interrogation methods that the Department of Defense could lawfully employ. *See* 119 Stat. at 2739. In making these points, I do not mean to endorse or reject the disqualification decisions made by Justice Gorsuch and Chief Judge Srinivasan, which I have neither the knowledge nor the authority to do. Instead, I simply point out that each of us faced different considerations given the work each of us had done at DOJ, so their decisions do not control mine.

Bahlul does not press a distinct argument under section 455(a), but I will address that provision for the sake of completeness. Section 455(b)(3) specifically addresses when a judge must recuse based on past government service, and it "draw[s] the recusal line … at participation in the proceeding or expression of an opinion concerning the merits of the

6

particular case in controversy." *Baker & Hostetler LLP v. Dep't of Commerce*, 471 F.3d 1355, 1357 (D.C. Cir. 2006) (opinion of Kavanaugh, J.). Likewise, section 455(b)(1) draws a specific recusal line at knowledge of disputed evidentiary facts concerning the proceeding. Section 455(a) is a more general "catch-all" provision, so we should not lightly use it to shift the lines specifically drawn in section 455(b). *See id.* at 1357–58. At most, that should occur only in "rare and extraordinary circumstances," *id.* at 1358, which are not present here. In short, my work at DOJ does not disqualify me under the specific rules set forth in section 455(b), and no other consideration tips the balance in favor of disqualification under section 455(a).

For these reasons, the motion to disqualify is denied.

*So ordered*.