[ORAL ARGUMENT NOT YET SCHEDULED]
**Case No. 22-1097**

---

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

ALI HAMZA AHMAD SULIMAN AL BAHLUL,

*Petitioner.*

*v.*

UNITED STATES OF AMERICA,

*Respondent.*

---

On petition for review from a decision of the
Court of Military Commission Review

---

**Petition for Rehearing En Banc**

---

MAJ Todd E. Pierce, JA, USA (Ret.)
Univ. of Minnesota Human Rights
Center Mondale Hall, N-120
229-19th Avenue South
Minneapolis, MN 55455

Michel Paradis
LT Jennifer Joseph, JAGC, USN
Aaron Shepard
Military Commission Defense
Organization
1620 Defense Pentagon
Washington, DC 20301-1620
michel.d.paradis.civ@mail.mil
1.703.695.4672

*Counsel for Petitioner*

**CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES**

**I.      PARTIES AND *AMICI* APPEARING BELOW**

The parties and *amici* who appeared before the Court of Military Commission Review in connection with the decision under review:

    1.  Ali Hamza Ahmad Suliman al Bahlul, *Appellant*

    2.  United States of America, *Appellee*

**II.     PARTIES AND *AMICI* APPEARING IN THIS COURT**

    1.  Ali Hamza Ahmad Suliman al Bahlul, *Petitioner*

    2.  United States of America, *Respondent*

    3.  Center for Victims of Torture, *Amicus Curiae*

    4.  Roger Waters, et al., *Amicus Curiae*

**III.    RULINGS UNDER REVIEW**

This case arises from a timely petition for review of the decision of the Court of Military Commission Review in *United States v. Al Bahlul*, CMCR 21-003 (May 17, 2022). That decision was reported at 603 F.Supp.3d 1151. The panel's decision is reported at 2023 WL 4714324.

**IV.     RELATED CASES**

Petitioner previously filed petitions for review from decisions of the CMCR, which this Court docketed as Case Nos. 11-1325 and 19-1076 respectively and which both resulted in remands back to the CMCR. While considering Case Nos. 11-1325 and 19-1076, this Court issued five decisions which were reported at 2013 WL 297726, 767 F.3d 1, 792 F.3d 1, 840 F.3d 757, and 967 F.3d 858. Counsel are aware of no other cases that meet this Court's definition of related.

Dated: September 8, 2023

                                         By: /s/ Michel Paradis
                                            Counsel for Petitioner

## TABLE OF CONTENTS

Table of Authorities..................................................................... 3

Rule 35(B) Statement ................................................................ 6

Questions Presented ................................................................. 8

Statement ................................................................................. 9

Argument ................................................................................. 16

    I.    It is exceptionally important that the Supreme Court's decisions on whether an officer is lawfully appointed can be faithfully applied............................................................. 16

    II.    The use of evidence obtained by torture is contrary to clear circuit precedent and raises questions of exceptional importance.................... 22

Conclusion ............................................................................... 24

Certificate of Compliance with Rule 32(a) ............................. 25

Certificate of Service ............................................................... 26

Addendum ............................................................................... 27

# TABLE OF AUTHORITIES

*Petitioner places primary reliance on authorities marked with an ***

## Cases

*Chambers v. Florida,*
  309 U.S. 277 (1940).............................................................. 11, 22

*Chapman v. California,*
  386 U.S. 18 (1967).................................................................... 13

*United States v. Arthrex,*
  141 S. Ct. 1970 (2021).................................................. 5, 15, 17-18

*United States v. Powe,*
  591 F.2d 833 (D.C. Cir. 1978)............................................... 21-22

*Al-Hela v. Biden,*
  66 F.4th 217 (D.C. Cir. 2023)..................................................... 20

*Arthrex v. Smith & Nephew,*
  941 F.3d 1320 (Fed. Cir. 2019) ............................................. 13, 18

*Bahlul v. United States,*
  767 F.3d 1 (D.C. Cir. 2014)......................................................... 12

*Bahlul v. United States,*
  967 F.3d 858 (D.C. Cir. 2020)............................. 12-13, 15-16, 19

*Dale v. Barr,*
  967 F.3d 133 (2d Cir. 2020) ....................................................... 17

*Hamdan v. Rumsfeld,*
  548 U.S. 557 (2006)...................................................................... 9

*Harper v. Va. Dep't of Taxation,*
  509 U.S. 86 (1993)...................................................................... 16

*In re Al-Nashiri,*
  47 F.4th 820 (D.C. Cir. 2022)..................................................... 21

*Loumiet v. United States,*
  948 F.3d 376 (D.C. Cir. 2020)..................................................... 17

*Lucia v. SEC,*
  138 S. Ct. 2044 (2018)................................................................ 12

*United States v. Donziger*,
    38 F.4th 290 (2d Cir. 2022) ......................................................... 16

*United States v. Edmond*,
    520 U.S. 651 (1997) ..................................................................... 12

*United States v. Giltner*,
    972 F.2d 1563 (11th Cir.1992) .................................................... 17

*United States v. Holloway*,
    630 F.3d 252 (1st Cir. 2011) ....................................................... 17

*United States v. Olano*,
    507 U.S. 725  (1993) .................................................................... 21

*United States v. Powe*,
    591 F.2d 833 (D.C. Cir. 1978) .................................................... 22

*Verizon California Inc. v. Peevey*,
    413 F.3d 1069 (9th Cir. 2005) .................................................... 18

## U.S. Code

10 U.S.C. § 948b ........................................................................ 10

10 U.S.C. § 948r ........................................................... 6, 11, 14, 21

10 U.S.C. § 949b ........................................................................ 19

10 U.S.C. § 950b ........................................................................ 19

## Legislative Materials

S. Prt. 110-54, *Inquiry into the Treatment of Detainees in U.S.
    Custody*, 110th Cong., 2nd sess  (Nov. 20, 2008) ........................... 8

## Executive Materials

Regulation for Trial by Military Commission (2007) ........................ 10

Rules for Military Commission ........................................................ 10

## Miscellaneous

Antonin G. Scalia, *Vermont Yankee: The APA, the D.C.
    Circuit, and the Supreme Court*,
    1978 Sup.Ct. Rev. 345 (1978) .................................................... 18

Brian F. Mannix, *On the Constitutionality of Guantanamo Tribunals*, FedSoc.org, Dec. 15, 2022 ............................................................ 20

Charlie Savage, Carol Rosenberg, *Biden Rejects Proposed Conditions for Plea Deals in Sept. 11 Case*, *N.Y. Times*, Sept. 6, 2023 .................................................. 19

Eric M. Fraser *et al*, *The Jurisdiction of the D.C. Circuit*, 23 Cornell J. L. & Pub. Pol'y 131 (2013) ...................................... 18

Laura Stanley, *Supervising Guantanamo Tribunals: Appointments Clause Challenges After* Arthrex, 90 Geo. Washington L. Rev. 1265 (2022) ...................................... 20

Robert Loeb, *D.C. Circuit Hears Oral Argument in Bahlul v. United States*, Lawfare Blog, March 23, 2023 ............................................ 20

## RULE 35(B) STATEMENT

Petitioner respectfully asks this Court rehearing this case en banc to decide two questions of exceptional importance.

1.      The first question is exceptionally important because the panel's opinion holds that a major decision of the Supreme Court cannot abrogate contrary circuit precedent until this Court, sitting on en banc, holds that it does.

*United States v. Arthrex*, 141 S. Ct. 1970 (2021), was the Supreme Court's first decision in twenty-five years to rule on when an official must be a principal officer under the Appointments Clause. It held that only principal officers may be delegated the "unreviewable authority" to make final decisions that bind United States in the disposition of executive adjudications. The panel acknowledged that this reading of *Arthrex* is both "plausible" and supported by every scholar and jurist to opine on the question. Op. 16-17. But the panel held that it could not apply this or any other reading of *Arthrex* because the Supreme Court's opinion did not "'clearly' disavow[] or 'eviscerate[]'" the multifactor balancing test that this Court had developed pre-*Arthrex* on the principal/inferior officer distinction. Op. 17.

The stringency of the standard the panel applied for when an intervening Supreme Court decision permits a panel of this Court to revisit the law of the circuit is contrary to the law of this circuit. In addition, neither *Arthrex*'s holding nor its reasoning are fairly reconcilable with this Court's pre-*Arthrex* precedent.

6

But even if Petitioner is wrong on both of those points, rehearing en banc is warranted. The panel's opinion fixes this Court's pre-*Arthrex* precedent in place as law of this circuit, irrespective of what *Arthrex* held, while at the same time cautioning lawmakers, litigants, and the public that this same circuit precedent is plausibly no longer good law because of *Arthrex*.

Only this Court, sitting en banc, can settle what *Arthrex* held. Petitioner, therefore, respectfully submits that since the question presented was exceptionally important enough for the Supreme Court to decide, it is exceptionally important for this circuit to faithfully apply the Supreme Court's answer.

2.      The second question is exceptionally important because under the long-settled law of this circuit, as well as the considered judgment of Congress, defendants' custodial statements may not be used as evidence against them, unless a court has found those statements were voluntarily given.

Here, the CMCR conducted a *de novo* review of the record of Petitioner's trial to determine whether his convictions on two since-vacated charges was harmless error beyond a reasonable doubt. In holding that error harmless, however, the CMCR relied upon uncorroborated, coerced confessions that were arguably admissible at the time of Petitioner's trial, but which Congress subsequently rendered inadmissible when it amended 10 U.S.C. § 948r.

The panel declined to review the CMCR's reliance on such evidence, finding that Petitioner forfeited the objection below. Petitioner respectfully disagrees with that finding. However, assuming forfeiture, a forfeited error still warrants a remedy in a criminal case if it constitutes plain error.

The panel's failure to review this objection for plain error appears to have been an oversight and Petitioner has, contemporaneously, filed a petition for panel rehearing on this issue. Should the panel deny rehearing, this Court should grant rehearing en banc, because the panel's decision conflicts with circuit precedent and presents the exceptionally important question of whether this Court may affirm legal conclusions that rest upon torture.

## QUESTIONS PRESENTED

1.      Under *Arthrex*, may inferior officers be delegated the authority to make significant final decisions that bind the Executive Branch to use executive power in a particular way?

2.      Is it plain error for a lower court to rely on evidence that was inadmissible because it was obtained by torture and cruel, inhuman, and degrading treatment?

**STATEMENT**

Petitioner is a Yemeni national who was arrested in Pakistan and taken to the detention facility at the U.S. Naval Station in Guantánamo Bay, Cuba, in January 2002. It is a matter of public record that, in the period from 2002 to 2003, intelligence goals were established for each detainee, such as "to 'break the detainee and establish his role in the attacks of Sept[ember] 11, 2001.'" S. Prt. 110-54, *Inquiry into the Treatment of Detainees in U.S. Custody*, 110th Cong., 2nd sess., at 76 (Nov. 20, 2008) ("SASC Report").[1] As a Senate Armed Services Committee investigation found, those goals were pursued using methods derived from "Chinese Communist techniques used during the Korean war to elicit false confessions." *Id*. at 1. These involved stripping detainees' "clothing, placing them in stress positions, putting hoods over their heads, disrupting their sleep, treating them like animals, subjecting them to loud music and flashing lights, and exposing them to extreme temperatures." *Ibid*. According to a 2002 policy memo, "all aspects of the [detention] environment should enhance capture shock, dislocate expectations, foster dependence, and support exploitation to the fullest extent possible." *Id*. at 52.

In March 2004, a military prosecutor working on Petitioner's case internally objected that there was "reason to believe that al Bahlul had suffered …

---

[1] https://perma.cc/BLM5-R4YE

mistreatment or torture." App. 92. He further alleged that prosecutors' selection of interrogation records as evidence was "misleading," *ibid*., and compromised by the "systematic destruction of statements of the detainees." App. 93.

Three months later, Respondent convened a military commission to prosecute Petitioner on a single count of conspiracy. App. 138-139. Petitioner has never been alleged to have directly participated in or had any foreknowledge of any terrorist attack, and a prosecutor in Petitioner's case publicly described him as a "Little Fish." App. 116.

Petitioner objected on various grounds, including that he was unable to defend himself due to the secrecy rules, which permitted the admission of confessions "yielded under --- under torture." App. 190. He further prepared nine written objections that he read into the record (the "Nine Points"), which included the "secret evidence issue" and the fact that the military commission was conducted by institutions that "carr[y] out torture." App. 180-186. Petitioner's military counsel further challenged the admissibility of custodial statements obtained from Petitioner under torture, prompting the then-presiding military judge to note that coerced statements were not inadmissible per se. App. 193-197.

The first commission disbanded following *Hamdan v. Rumsfeld*, 548 U.S. 557 (2006), but Petitioner was again prosecuted on the basis of the same evidence

before a newly-constituted military commission created pursuant to the Military Commissions Act of 2006, 120 Stat. 2600 ("MCA").

The MCA was modeled on the structures, rules, and procedures governing courts-martial under the Uniform Code of Military Justice ("UCMJ"), 10 U.S.C. § 948b(c), under which individual commissions are convened *ad hoc*. Regulation for Trial by Military Commission ("RTMC") § 5-3 (2007); Rule for Military Commission ("RMC") 504(b) (2007). Under the MCA, military commissions "may be convened by the Secretary of Defense or by any officer or official of the United States designated by the Secretary for that purpose." 10 U.S.C. § 948h. An individual so designated is the Convening Authority for Military Commissions ("the Convening Authority"), who heads the military commission system and reports to the Secretary and the Deputy Secretary of Defense as appropriate. RTMC § 2-1, 2-3(b). On February 6, 2007, the Secretary issued a two-sentence memorandum designating Ms. Susan Crawford ("Crawford") as the Convening Authority. App. 46. In February 2008, Crawford convened a military commission to prosecute Petitioner for three of the MCA's inchoate crimes. App. 140-145.

During pre-trial proceedings, Petitioner attempted to again assert his Nine Points. App. 201-203. He also complained of being threatened with rendition to Egypt because of "their bad reputation in getting information by force," and stated that Respondent "since 2002 until now, practice the torturing but in a more civil

11

way and smart and tortures for the calls of torturing, not only tortures to extract information." App. 199-200.

Prosecutors called fourteen witnesses. The bulk of the testimony came from interrogators who recounted admissions Petitioner allegedly made during custodial interrogations in 2002 and 2003. At the time of Petitioner's trial, the Fifth Amendment was held not to apply, involuntary custodial statements were generally admissible, 10 U.S.C. § 948r (2006), and military commissions gave "little weight to the coercive effect that may have otherwise resulted from long detention [in Guantanamo] without 'access to friends, advisers or counselors,' subjected to 'protracted questioning and cross questioning' by 'men who held their lives – so far as these ignorant petitioners could know – in the balance.'" *United States v. Hamdan*, D-029 & D-044, Ruling, at 16 (Jul. 20, 2008)[2] (quoting *Chambers v. Florida*, 309 U.S. 277, 238-41 (1940)). Hence, the trial judge in Petitioner's case instructed the members only that, "You must decide the weight or significance, if any, such statements deserve under all the circumstances." Transcript of Record ("Tr.") at 873, *United States v. Bahlul* (2008). No finding of voluntariness was made, or mentioned.

---

[2] https://perma.cc/QFP3-VP6M

The commission found Petitioner guilty on all charges and sentenced him to life imprisonment. App. 258. In June 2009, Crawford approved the judgment and sentence without exception. App. 152. Petitioner timely petitioned for review in this Court, which unanimously vacated two of the three charges of conviction, and remanded to the CMCR to "determine the effect, if any, of the two vacaturs on sentencing." *Bahlul v. United States*, 767 F.3d 1 (D.C. Cir. 2014) (en banc).

Proceedings on remand gave rise to the two questions presented here.

**The Appointments Clause**. On remand, Petitioner raised a timely jurisdictional challenge following the Supreme Court's intervening decision in *Lucia v. SEC*, 138 S. Ct. 2044 (2018). He argued, *inter alia*, that only principal officers may be designated as the Convening Authority because of their unreviewable final decision-making authority. The CMCR rejected this argument and this Court affirmed. While this Court acknowledged that "several of the Convening Authority's consequential powers … are effectively unreviewable." *Bahlul v. United States*, 967 F.3d 858, 872 (D.C. Cir. 2020), it held that the Convening Authority could be an inferior officer based upon circuit precedent, which weighed three "factors identified by [*United States v. Edmond*, 520 U.S. 651 (1997)] and our subsequent cases" to hold that an inferior officer could wield "unreviewable" authority if they were subject to rulemaking, personnel rules, and removability. *Id.* at 871.

13

After this Court remanded Petitioner's case a second time to the CMCR, the Supreme Court decided *Arthrex*, which reversed a decision from the Federal Circuit that had applied the same circuit precedent applied in Petitioner's case. *Arthrex v. Smith & Nephew*, 941 F.3d 1320, 1329 (Fed. Cir. 2019). Petitioner therefore renewed his Appointments Clause challenge to the Convening Authority before the CMCR, and on a petition for review.

The panel held "Bahlul's argument that *Arthrex* determined that the Patent Judges were principal officers based solely on their final decision-making authority is plausible." Op. 16-17. But under the stringent standard the panel adopted for revisiting circuit precedent, Petitioner's "reading of the case is 'not sufficiently clear' to justify overturning the law of the circuit." *Ibid.*

**Torture Evidence.** On remand in 2017, the CMCR affirmed Petitioner's life sentence after concluding that it could review the record of trial to assess whether the *ex post facto* error was harmless error without remanding for a resentencing hearing. In 2020, this Court affirmed the CMCR's conclusion that it could conduct harmless error review without a resentencing hearing. *Bahlul*, 967 F.3d at 867. But it reversed and remanded because the CMCR had failed to conduct harmless error review in conformity with *Chapman v. California*, 386 U.S. 18, 24 (1967).

On the second remand, Petitioner noted that a substantial portion of the record evidence was uncorroborated, coerced confessions Petitioner alleged made

to Guantanamo interrogators between 2002-2003. Brief for Appellant at 5, 44 n.4, *United States v. Bahlul*, No. 20-002 (C.M.C.R., Dec. 20, 2021). In its opposition brief, Respondent relied extensively upon these same uncorroborated, coerced confessions. Petitioner then objected that these statements were inadmissible under § 948r, and that Respondent could not rely on them to meet its burden to show harmless error.

Despite these objections, CMCR relied near-exclusively upon Petitioner's uncorroborated, coerced confessions to find harmless error. Petitioner promptly petitioned the CMCR for rehearing, which was denied without comment, save for the concurrence of a single member, who, writing only for himself, stated without explanation that the CMCR had not relied upon inadmissible evidence. App. 36.

Petitioner raised the CMCR's improper reliance on coerced confessions as the second assignment of error in his petition for review. The panel declined to address the issue, however, finding that he forfeited the objection.

## ARGUMENT

## I.    IT IS EXCEPTIONALLY IMPORTANT THAT THE SUPREME COURT'S DECISIONS ON WHETHER AN OFFICER IS LAWFULLY APPOINTED CAN BE FAITHFULLY APPLIED.

*Arthrex* was the Supreme Court's first decision since *Edmond* on when an official must be a principal officer under the Appointments Clause. The case arose from the Federal Circuit, which had expressly adopted the multifactor balancing test that this Court had "drawn from *Edmond*." *Bahlul*, 967 F.3d at 871. The Supreme Court reversed and remanded in order to clarify "the proper application of *Edmond*," *Arthrex*, 141 S. Ct. at 1983, under which government officials' "unreviewable authority … is incompatible with their appointment by the Secretary to an inferior office." *Id*. at 1985. "What matters," the Court held, "is that the [principal officer] have the discretion to review decisions rendered by [the inferior officer]." *Id*. at 1988.

Fairly read, *Arthrex* held that final decision-making authority in the disposition of Executive adjudications is a category of executive power that may only delegated to principal officers. Even if Petitioner is wrong about that, however, full court review remains necessary because the panel's decision renders a decision of the Supreme Court a dead letter, while at the same time casting significant doubt over what the law is.

The panel held that Petitioner's claim was foreclosed by the law of the circuit; to wit, the pre-*Arthrex* decision in his case, which like the Federal Circuit in *Arthrex*, applied three "factors identified by *Edmond* and our subsequent cases." *Bahlul*, 967 F.3d 871.

In reaching that conclusion, the panel did not hold that *Arthrex* was consistent with either that prior decision or the circuit precedent underlying it. To the contrary, the panel acknowledged that, at a minimum, *Arthrex* broke new ground in assigning "the most weight to the factor of un-reviewability." Op. 15. And it further acknowledged that it was "plausible" that *Arthrex* held that the "un-reviewability" factor is dispositive, citing a page of judicial and scholarly authority supporting this conclusion. Op. 16-17; *see also United States v. Donziger*, 38 F.4th 290, 301 (2d Cir. 2022). The panel nevertheless held that it was precluded from applying *Arthrex* because, under the stringent standard it adopted for when a panel may revisit conflicting circuit precedent, *Arthrex* did not expressly disavow this circuit's multifactor balancing test. Op. 17.

Rehearing en banc is therefore necessary because when the Supreme Court decides a rule of law, "that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review." *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97 (1993).

17

Ordinarily, circuit precedent yields when "overtaken by" an intervening decision of the Supreme Court. *Loumiet v. United States*, 948 F.3d 376, 382 (D.C. Cir. 2020). The panel's stringent standard conflicts with this Court's usual rule, it improperly privileges circuit precedent over vertical stare decisis, *see Winslow v. FERC*, 587 F.3d 1133, 1135 (D.C. Cir. 2009), and it is dramatically out of step with other circuits. *Compare* Op. 11-12 (this Court does not "revisit a prior decision where a new Supreme Court opinion merely indicated 'doubts' about" circuit precedent) *with Dale v. Barr*, 967 F.3d 133, 142 (2d Cir. 2020) (a panel may revisit circuit precedent "where an intervening Supreme Court decision casts doubt on the prior ruling."); *United States v. MacKay*, 610 F. App'x 797 (10th Cir. 2015) (Gorsuch, J.); *United States v. Holloway*, 630 F.3d 252, 258 (1st Cir. 2011); *United States v. Giltner*, 972 F.2d 1563, 1566 (11th Cir.1992).

But assuming the panel's standard is correct, its stringency necessarily heightens this Court's duty to sit en banc when circuit precedent plausibly conflicts with later Supreme Court decisions directly on point. Fed. R. App. Pro. 35(b)(1)(A); *see also Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 67 (1996).

Without rehearing en banc, it is now law of this circuit that *Arthrex* plausibly abrogated circuit precedent in ways that, as Justice Thomas noted in dissent, created a "new Appointments Clause doctrine." *Arthrex*, 141 S. Ct. at 2003 (Thomas, J. dissenting). But it is also law of the circuit that future panels cannot

18

apply *Arthrex* faithfully, not because *Arthrex* reaffirmed prior circuit precedent, but because it only plausibly overruled it. Only the en banc court can, therefore, settle what *Arthrex* means.

A definitive answer to that question is exceptionally important, as the Supreme Court's grant of certiorari in *Arthrex* demonstrates. The Federal Circuit, from which certiorari was granted, had not created a circuit split. It applied the very circuit precedent this Court applied to decide Petitioner's case. *Arthrex*, 941 F.3d at 1329. The Supreme Court nevertheless reversed, taking the opportunity to clarify "the proper application of *Edmond*," *Arthrex*, 141 S. Ct. at 1983, presumably because the Federal Circuit had "decided an important federal question in a way that conflicts with relevant decisions of [the Supreme] Court." S. Ct. Rule 10(c). And if nothing else, *Arthrex* establishes that the "proper application of *Edmond*" – which the panel's decision now leaves uncertain – is important.

Its importance in this circuit is heightened because of this Court's preeminence on questions of administrative law. *See Verizon California Inc. v. Peevey*, 413 F.3d 1069, 1084 (9th Cir. 2005) (Bea, J., concurring); Antonin G. Scalia, *Vermont Yankee: The APA, the D.C. Circuit, and the Supreme Court*, 1978 Sup.Ct. Rev. 345, 371 (1978); Eric Fraser, *The Jurisdiction of the D.C. Circuit*, 23 Cornell J. L. & Pub. Pol'y 131, 154-155 (2013). This Court has a special duty to ensure that agencies, lawmakers, lower courts, and the public know whether a

major Supreme Court decision on an administrative law question of constitutional magnitude applies.

The law governing the appointment of the Convening Authority is also of systemic importance to the military commission system. The Convening Authority has the "sole discretion and prerogative" to dispose of military commission cases, 10 U.S.C. §§ 949b(c); 950b(c), decisions which constitute "judicial acts" insulated from any executive influence. *Id*. § 949b(a)(2)(B). A Convening Authority's decision, for example, to enter into a plea agreement that withdraws the death penalty is "unreviewable." *Bahlul*, 967 F.3d at 872. That means, responsible executive officials can disclaim – and have disclaimed – any responsibility for decisions made in Guantanamo cases, including whether the death penalty should be sought in the September 11th Case. Charlie Savage, Carol Rosenberg, *Biden Rejects Proposed Conditions for Plea Deals in Sept. 11 Case*, *N.Y. Times*, Sept. 6, 2023, at A16. Under the pre-*Arthrex* law of the circuit, that is true even if the Convening Authority is an inferior officer. But under *Arthrex*, it is "plausible" that this is the very reason a Convening Authority must be a principal officer.

The significance of this question has been noted by several public commentators unaffiliated with Petitioner in this case, or Guantánamo detainee litigation more generally. Laura Stanley, *Supervising Guantanamo Tribunals: Appointments Clause Challenges After* Arthrex, 90 GEO. WASHINGTON L. REV.

1265 (2022); Robert Loeb, *D.C. Circuit Hears Oral Argument in Bahlul v. United States*, Lawfare Blog, March 23, 2023;[3] Brian F. Mannix, *On the Constitutionality of Guantanamo Tribunals*, FedSoc.org, Dec. 15, 2022.[4] And whatever the answer, the panel's decision casts fatal doubt over any action taken to resolve these cases.

The question of whom may serve as Convening Authority is at least as systemically important to the Guantanamo litigation as the other questions on which this Court has granted rehearing *en banc*. "The question implicates an important part of the U.S. Government's war strategy. And other cases in the pipeline require a clear answer to the question." *Bahlul v. United States*, 840 F.3d 757, 760 n.1 (D.C. Cir. 2016) (en banc) (Kavanaugh, J.); *see also Al-Hela v. Biden*, 66 F.4th 217, 225 (D.C. Cir. 2023) (en banc).

Rehearing en banc is therefore warranted.

---

[3] https://perma.cc/E9HP-6GBV

[4] https://perma.cc/X8H2-DHCD

## II.   THE USE OF EVIDENCE OBTAINED BY TORTURE IS CONTRARY TO CLEAR CIRCUIT PRECEDENT AND RAISES QUESTIONS OF EXCEPTIONAL IMPORTANCE.

The panel concluded that Petitioner forfeited his objection to the CMCR's use of record evidence that Congress subsequently made inadmissible under 10 U.S.C. § 948r. In doing so, the panel overlooked the need to review the CMCR's decision for plain error. Under longstanding circuit precedent, both the use of coerced confessions and the failure to conduct a *Denno* hearing when presented with "alerting circumstances" indicating that a defendant's confessions might be coerced, constitute plain error. *United States v. Powe*, 591 F.2d 833, 842–43 (D.C. Cir. 1978). And even in the absence of circuit precedent, the CMCR's error was plain under the four-factor test set forth in *United States v. Olano*, 507 U.S. 725, 733-34 (1993).

Petitioner respectfully disagrees that his objections to the CMCR's use of his involuntary custodial statements were untimely. Petitioner's only claim is that in conducting its *de novo* review of the record under *Chapman*, the CMCR could not use inadmissible evidence to determine whether the errors that led this Court to remand were harmless. That claim became ripe only after Respondent proffered such evidence in its briefing to the CMCR below. *In re Al-Nashiri*, 47 F.4th 820, 826 (D.C. Cir. 2022).

Assuming, however, Petitioner objected too late, an untimely objection in a criminal case remains reviewable for plain error. *United States v. Flores*, 995 F.3d 214 (D.C. Cir. 2021). In this circuit, forfeited sentencing objections remain reviewable for plain error even after multiple remands, precisely because it is the sentence that remains subject to review. *United States v. Miller*, 35 F.4th 807 (2022). And here, under long-standing circuit precedent, the CMCR's error is plain. *Powe*, 591 F.2d at 842–43.

Even in the absence of circuit precedent, this error was plain under the four-factor test the Supreme Court set forth in *Olano*, because it violated a clear statute to Petitioner's prejudice, and if uncorrected, would seriously damage the "fairness, integrity and public reputation" of American judicial proceedings. *See*, e.g., *Chambers*, 309 U.S. at 238-41; *United States v. Nashiri*, AE 46CCC (Aug. 18, 2023)[5]("the admission of evidence obtained by or derived from torture … would greatly undermine the actual and apparent fairness of the criminal proceeding.").

Rehearing en banc is therefore warranted.

---

[5] https://perma.cc/8GTB-YZRY

## CONCLUSION

Petitioner respectfully asks this Court to rehear this case en banc because it is exceptionally important that major decisions of the Supreme Court be applied faithfully in this circuit, and that this Court does not set a precedent tolerating judicial proceedings predicated upon torture.

Respectfully submitted,

 /s/     Michel Paradis        
Michel Paradis
LT Jennifer Joseph, JAGC, USN
Aaron Shepard
Military Commission Defense Organization
1620 Defense Pentagon
Washington, DC 20301-1620
michel.d.paradis.civ@mail.mil
1.703.695.4672

MAJ Todd E. Pierce, JA, USA (Ret.)
Univ. of Minnesota Human Rights Center
Mondale Hall, N-120
229-19th Avenue South
Minneapolis, MN 55455

*Counsel for Petitioner*

**CERTIFICATE OF COMPLIANCE WITH RULE 32(A)**

**Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements**

1. This petition complies with the type-volume limitations imposed by Fed. R. App. P. 35(b)(2)(A) because:

[X] this petition contains 3,791 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[ ] this petition uses a monospaced typeface and contains ____ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[X] this petition has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font size and Times New Roman type style; *or*

[ ] this petition has been prepared in a monospaced typeface using _____ with _____.

Dated: September 8, 2023

Respectfully submitted,

/s/ Michel Paradis
*Counsel for Petitioner*

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2023, a copy of the foregoing was filed electronically with the Court. Notice of this filing will be sent to all parties by operation of this Court's electronic filing system. Parties may access this filing through the Court's system.

Dated: September 8, 2023

Respectfully submitted,

/s/ Michel Paradis
*Counsel for Petitioner*

## ADDENDUM

*Al Bahlul v. United States*,

Case No. 22-1097, slip op. (D.C. Cir., Jul. 25, 2023)

# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued March 22, 2023          Decided July 25, 2023

No. 22-1097

ALI HAMZA AHMAD SULIMAN AL BAHLUL,
PETITIONER

v.

UNITED STATES OF AMERICA,
RESPONDENT

———

Consolidated with 22-1173

———

On Petitions for Review from the United States
Court of Military Commission Review

———

*Michel Paradis*, Counsel, Office of the Chief Defense Counsel, argued the cause for petitioner. With him on the briefs were *Todd E. Pierce* and *Alexandra Link.*

*Eric L. Lewis* was on the brief for *amicus curiae* Concerned Musicians in support of petitioner.

*John S. Summers, Andrew M. Erdlen,* and *Alexander J. Egervary* were on the brief for *amici curiae* The Center for Victims of Torture, et al. in support of petitioner.

2

*Danielle S. Tarin*, Attorney, U.S. Department of Justice, argued the cause for respondent. With her on the brief were *Matthew G. Olsen*, Assistant Attorney General for National Security, *Steven M. Dunne*, Chief, and *Joseph F. Palmer*, Attorney.

Before: KATSAS and PAN, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* PAN.

PAN, *Circuit Judge*. Petitioner Ali Hamza Ahmad Suliman al Bahlul ("Bahlul") served as the personal assistant and public-relations secretary to Usama bin Laden, the leader of al Qaeda and mastermind of the 9/11 terrorist attack against the United States. Members of a military commission convicted Bahlul of conspiracy to commit war crimes, providing material support for terrorism, and solicitation of others to commit war crimes. The members sentenced Bahlul to imprisonment for life, and the U.S. Court of Military Commission Review ("CMCR") affirmed. On Bahlul's first appeal to this court, we upheld the conspiracy charge but vacated the other convictions as unconstitutional under the *Ex Post Facto* Clause. The CMCR subsequently reaffirmed Bahlul's remaining conspiracy conviction and life sentence, twice. In these petitions for review of the CMCR's latest decision, Bahlul asks us to vacate his conspiracy conviction or, alternatively, to remand his case for resentencing by military-commission members. We deny the petitions.

3

## I. BACKGROUND

Bahlul is a Yemeni national who traveled to Afghanistan in the late 1990s and joined al Qaeda. He attended an al Qaeda training camp and pledged a loyalty oath to Usama bin Laden, who assigned him to al Qaeda's media operations. After suicide bombers targeted a U.S. naval ship, the U.S.S. Cole, in October 2000, bin Laden directed Bahlul to produce a propaganda video celebrating the attack. The video that Bahlul created included footage of the bombing, as well as calls for jihad against the United States. Al Qaeda distributed the film widely and in several languages as part of its recruiting efforts.

Bahlul then became bin Laden's personal assistant and secretary for public relations. In that role, Bahlul arranged for two of the 9/11 hijackers to make loyalty oaths to bin Laden and helped prepare their "martyr wills" — propaganda declarations to be used after the attacks. In the days before 9/11, Bahlul traveled with bin Laden and maintained bin Laden's media equipment. On the day of the attacks, Bahlul ensured that bin Laden could listen to media reports about them. Afterward, Bahlul fled to Pakistan, where he was captured in December 2001 and turned over to the United States. Since 2002, Bahlul has been detained at the U.S. Naval Base at Guantanamo Bay, Cuba.

We have described Bahlul's extensive legal proceedings in past decisions. *See, e.g.*, *Al Bahlul v. United States* (*Al Bahlul II*), 767 F.3d 1, 6–8 (D.C. Cir. 2014) (en banc). Here, we focus on the procedural history relevant to this appeal.

In 2003, President George W. Bush designated Bahlul as eligible for trial by military commission under the 2001 Authorization for Use of Military Force ("AUMF") and 10 U.S.C. § 821. Military prosecutors charged Bahlul with

conspiracy to commit war crimes in 2004. But that prosecution was suspended when the Supreme Court held in *Hamdan v. Rumsfeld*, 548 U.S. 557 (2006), that the procedures governing the military commissions convened under the AUMF and § 821 rendered those commissions unlawful.

After *Hamdan*, Congress enacted the Military Commissions Act ("MCA") of 2006, Pub. L. No. 109–366, 120 Stat. 2600 (2006). *See also* Military Commissions Act of 2009, Pub. L. No. 111-84, 123 Stat. 2190, 2574 (2009) (amending MCA). That Act "establishe[d] procedures governing the use of military commissions to try alien unprivileged enemy belligerents for violations of the law of war and other offenses triable by military commission." 10 U.S.C. § 948b(a); *see also id.* § 948b(a) (2006). The MCA enabled military commissions to "be convened by the Secretary of Defense or by any officer or official of the United States designated by the Secretary for that purpose." *Id.* § 948h. Pursuant to that authority, in 2007, the Secretary of Defense designated Susan Crawford, a Senior Judge of the U.S. Court of Appeals for the Armed Forces ("CAAF"), as the convening authority.

In 2008, Crawford convened a new military commission under the MCA to try Bahlul. This time, prosecutors charged him with conspiracy to commit war crimes, 10 U.S.C. § 950v(b)(28) (2006); providing material support for terrorism, *id.* § 950v(b)(25) (2006); and solicitation of others to commit war crimes, *id.* § 950u (2006). The conspiracy and solicitation charges alleged seven object crimes: murder of protected persons, attacking civilians, attacking civilian objects, murder in violation of the law of war, destruction of property in violation of the law of war, terrorism, and providing material support for terrorism.

5

Bahlul refused to participate in his trial before the military commission. He waived all pretrial motions, made no objections, asked no questions of prosecution witnesses, and presented no opening argument, defense, or closing argument. The members of the commission convicted Bahlul of all three charges. They made written findings that Bahlul had conspired to commit and solicited all seven alleged object offenses. They also specifically found that he had committed ten of eleven alleged overt acts, including pledging a loyalty oath to bin Laden; preparing the U.S.S. Cole propaganda video "to solicit, incite and advise persons to commit terrorism"; acting as personal and media secretary to bin Laden; arranging for two of the 9/11 hijackers to "pledge fealty" to bin Laden and preparing their martyr wills; and researching the economic effect of 9/11 on the United States for bin Laden. *Al Bahlul II*, 767 F.3d at 8 n.2. Bahlul was acquitted of only one overt act — wearing a suicide belt to protect bin Laden.

During sentencing, Bahlul did not question the prosecution's witnesses or raise objections. He did give an unsworn statement, admitting that he worked with bin Laden and explaining that he was a "media person in al Qaeda" who "put some clips in the videotape that [the members] . . . watched." Sentencing Transcript at 968:11–18, 969:9–10, 973:22–974:6. The members of the military commission imposed a life sentence.

The commission submitted the findings and sentence to the convening authority, as required by 10 U.S.C. § 950b(a). Crawford approved them in their entirety. At Bahlul's request, Crawford referred his case for review by the CMCR, pursuant to 10 U.S.C. § 950c(a). The CMCR affirmed his convictions and sentence in full. *See United States v. Al Bahlul*, 820 F. Supp. 2d 1141, 1158–59 (USCMCR 2011).

6

A panel of this court vacated Bahlul's convictions based on *Hamdan v. United States,* 696 F.3d 1238, 1247–48 (D.C. Cir. 2012), which held that the MCA did not authorize prosecution for conduct committed before its enactment in 2006. *See Al Bahlul v. United States* (*Bahlul I*), No. 11-1324, 2013 WL 297726, at *1 (D.C. Cir. Jan. 25, 2013) (per curiam). Sitting en banc, this court overruled *Hamdan*, and thus *Bahlul I*, but reinstated only Bahlul's conspiracy conviction. *Bahlul II*, 767 F.3d at 5, 11. We determined that the conspiracy conviction did not violate the *Ex Post Facto* Clause and remanded for a panel of this court to hear Bahlul's remaining challenges to that conviction. *Id.* at 18–27, 31.

A panel again vacated Bahlul's conspiracy conviction, determining that the MCA improperly permitted Article I tribunals to try conspiracy cases. *Al Bahlul v. United States* (*Bahlul III*), 792 F.3d 1, 3 (D.C. Cir. 2015). Sitting en banc once more, we reversed the panel decision and reinstated Bahlul's conspiracy conviction. *Al Bahlul v. United States* (*Bahlul IV*), 840 F.3d 757, 759 (D.C. Cir. 2016) (en banc). We remanded to the CMCR "to determine the effect, if any, of the two vacaturs [of the material-support and solicitation convictions] on sentencing." *Bahlul II*, 767 F.3d at 31.

The CMCR reaffirmed Bahlul's life sentence for conspiracy. It concluded that the military commission would have "sentenced the appellant to confinement for life" even "absent the error" with respect to his convictions for providing material support to terrorists and solicitation of others to commit terrorism. *Al Bahlul v. United States*, 374 F. Supp. 3d 1250, 1273 (USCMCR 2019). The CMCR also determined that life imprisonment was "an appropriate punishment for the sole remaining conviction." *Id.* at 1271–74. In addition, the CMCR rejected a new argument made by Bahlul: that the military court lacked jurisdiction to try him because the

7

convening authority was not properly appointed under the Appointments Clause. *Id.* at 1255, 1265, 1268–71.

On appeal of that decision to this court, Bahlul contended that the CMCR erred in its resentencing decision, both by re-examining his sentence itself instead of remanding to a military commission, and by misapplying the harmless-error doctrine. *Al Bahlul v. United States* (*Bahlul V*), 967 F.3d 858, 865 (D.C. Cir. 2020). This court held that "it was not an abuse of discretion [for the CMCR] to reevaluate Al Bahlul's sentence without remand to the military commission." *Id.* at 866. But we vacated Bahlul's sentence because the CMCR had failed to determine whether any constitutional error potentially affecting the sentence was harmless beyond a reasonable doubt. *Id.* at 866–67 (citing *Chapman v. California*, 386 U.S. 18, 24 (1967) and *United States v. Sales*, 22 M.J. 305, 307–08 (C.M.A. 1986)). We rejected Bahul's argument that his military commission was unlawfully convened because Crawford was a "principal officer" under the Appointments Clause but was not appointed by the President with the advice and consent of the Senate. *Id.* at 870; *see also* U.S. CONST. art. II, § 2, cl. 2. Employing three factors drawn from *Edmond v. United States*, 520 U.S. 651 (1997), we determined that Crawford was an inferior — not a principal — officer. *Bahlul V*, 967 F.3d at 870–73 (citing *In re Grand Jury Investigation*, 916 F.3d 1047, 1052 (D.C. Cir. 2019)). We therefore remanded solely "for the CMCR to redetermine 'the effect, if any, of the two vacaturs on sentencing'" under the appropriate harmless-error standard. *Id.* at 867 (quoting *Bahlul II*, 767 F.3d at 31). Bahlul's petition for a writ of certiorari was denied. *Al Bahlul v. United States*, 142 S. Ct. 621 (2021).

The CMCR once again affirmed Bahlul's life sentence. *Al Bahlul v. United States* (*Bahlul VI*), 603 F. Supp. 3d 1151, 1183 (USCMCR 2022). "Taking into consideration the entire record

8

of appellant's trial and sentencing," the CMCR declared that it was "certain beyond a reasonable doubt that, absent the constitutional errors, the members would have sentenced appellant to confinement for life." *Id.* at 1172. The CMCR also rejected Bahlul's renewed argument that the commission lacked jurisdiction because Crawford's appointment violated the Appointments Clause. *Id.* at 1157–60. This time, Bahlul relied on the Supreme Court's intervening decision in *United States v. Arthrex, Inc.*, 141 S. Ct. 1970 (2021). *Bahlul VI*, 603 F. Supp. 3d at 1155. The CMCR determined that nothing in *Arthrex* conflicted with its earlier decision upholding the appointment of Crawford as the convening authority. *Bahlul VI*, 603 F. Supp. 3d at 1157–60.

Bahlul sought reconsideration or rehearing en banc, raising the argument that the CMCR's decision impermissibly relied on evidence procured through Bahlul's torture or abuse. The en banc CMCR denied reconsideration. In a separate opinion, one judge commented that Bahlul cited nothing in the record demonstrating that the evidence on which the CMCR relied was the product of Bahlul's torture or abuse.

Bahlul appeals the CMCR's latest decision to reinstate his life sentence. We have jurisdiction under 10 U.S.C. § 950g(a).

## II. ANALYSIS

Bahlul raises three familiar challenges: (1) that the military commission lacked jurisdiction to hear his case because the convening authority was unconstitutionally appointed; (2) that the CMCR erred by not remanding his case to the military commission for resentencing and instead reevaluating his sentence itself; and (3) that the CMCR erred by determining that the military-commission members would have sentenced him to life imprisonment even absent the

constitutional errors at his trial.  He adds an argument that the CMCR erred by considering evidence gathered through his abuse and torture in determining that his life sentence remained appropriate.

As a threshold legal issue, we review the CMCR's determination that the convening authority was properly appointed de novo.  *See Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014); *EV v. United States*, 75 M.J. 331, 333 (C.A.A.F. 2016).[1]  We review the CMCR's sentencing decisions for abuse of discretion.  *See Bahlul V*, 967 F.3d at 866–67; 10 U.S.C. § 950g(d) ("The United States Court of Appeals for the District of Columbia Circuit . . . shall take action only with respect to matters of law, including the sufficiency of the evidence to support the verdict.").

## A. Appointments Clause

"The Appointments Clause of the Constitution lays out the permissible methods of appointing 'Officers of the United States,' a class of government officials distinct from mere employees."  *Lucia v. SEC*, 138 S. Ct. 2044, 2049 (2018) (quoting U.S. CONST. art. II, § 2, cl. 2).  The Clause provides that the President:

> shall nominate, and by and with the Advice and
> Consent of the Senate, shall appoint

---

[1]    The government previously argued before the CMCR that the Appointments Clause issue was not live because it was not jurisdictional.  *See Al Bahlul*, 370 F. Supp. 3d at 1259.  The government does not renew that argument here.  Accordingly, we need not consider whether the Appointments Clause issue implicated the subject-matter jurisdiction of the military commission, as our standard of review would be de novo either way.  *See Aamer*, 742 F.3d at 1028, 1038.

10

> Ambassadors, other public Ministers and
> Consuls, Judges of the supreme Court, and all
> other Officers of the United States, whose
> Appointments are not herein otherwise
> provided for, and which shall be established by
> Law: but the Congress may by Law vest the
> Appointment of such inferior Officers, as they
> think proper, in the President alone, in the
> Courts of Law, or in the Heads of Departments.

U.S. CONST. art. II, § 2, cl. 2. "By requiring the joint
participation of the President and the Senate, the Appointments
Clause was designed to ensure public accountability for both
the making of a bad appointment [of a principal officer] and
the rejection of a good one." *Edmond*, 520 U.S. at 660. It is
"designed to assure a higher quality of appointments," and is
"among the significant structural safeguards of the
constitutional scheme." *Id.* at 659.

All agree that the convening authority is an officer under
Article II. *See Bahlul V*, 967 F.3d at 870. The only dispute is
whether she is a "principal" officer, who must be appointed by
the President with advice and consent of the Senate, or an
"inferior" officer, who may be appointed by the President or
the Secretary of Defense acting alone. *See Buckley v. Valeo*,
424 U.S. 1, 132 (1976); *In re Grand Jury Investigation*, 916
F.3d at 1052. If the convening authority is a principal officer,
Crawford was improperly appointed by the Secretary, and the
remedy would be a new trial before a military commission
convened by a constitutionally appointed convening authority.
*See Lucia*, 138 S. Ct. at 2055 ("[T]he 'appropriate' remedy for
an adjudication tainted with an appointments violation is a new
'hearing before a properly appointed' official." (quoting *Ryder
v. United States*, 515 U.S. 177, 183, 188 (1995))).

11

We previously decided that the convening authority is an inferior officer. *See Bahlul V*, 967 F.3d at 870. Under the law-of-the case doctrine, a court should not reopen issues that it decided earlier. *See Wye Oak Tech., Inc. v. Republic of Iraq*, 24 F.4th 686, 697 (D.C. Cir. 2022). This is particularly so when a subsequent appeal is heard by a different panel. *United States v. Philip Morris USA Inc.*, 801 F.3d 250, 257 (D.C. Cir. 2015). Because we lack authority to overrule a prior panel's decision, "'an even stronger than usual version of the law-of-the-case doctrine,' law of the *circuit*, governs." *Id.* (emphasis original) (quoting *LaShawn A. v. Barry*, 87 F.3d 1389, 1395 (D.C. Cir. 1996) (en banc)). "[W]hen both doctrines are at work, the law-of-the-circuit doctrine should increase a panel's reluctance to reconsider a decision made in an earlier appeal in the same case." *LaShawn A.*, 87 F.3d at 1395.

We may depart from the law of the case and from circuit precedent, however, based on an intervening Supreme Court decision. *See Aamer*, 742 F.3d at 1032 (noting that panel need not follow law of the circuit if inconsistent with Supreme Court precedent); *Wye Oak Tech.*, 24 F.4th at 697–98 (explaining that courts should not follow law of the case when faced with an intervening change in law). For a panel to reconsider a prior decision of this court in favor of a new Supreme Court precedent, the Court's intervening decision must "effectively overrule[], *i.e.*, 'eviscerate[]'" the law of our circuit. *United States v. Williams*, 194 F.3d 100, 105 (D.C. Cir. 1999) (quoting *Dellums v. Nuclear Reg. Comm'n*, 863 F.2d 968, 978 n.11 (D.C. Cir. 1988)), *abrogated on other grounds by Apprendi v. New Jersey*, 530 U.S. 466 (2000); *accord Nat'l Inst. of Mil. Just. v. Dep't of Def.*, 512 F.3d 677, 682 n.7 (D.C. Cir. 2008). In other words, the "intervening Supreme Court precedent must clearly dictate a departure from circuit law." *Old Dominion Elec. Coop. v. FERC*, 892 F.3d 1223, 1232 n.2 (D.C. Cir. 2018) ((citing *Dellums*, 863 F.2d at 978 n.11)). For

12

example, we did not revisit a prior decision where a new Supreme Court opinion merely indicated "doubts" about the constitutionality of the statutory scheme at issue, and where the Court left "unresolved several questions that le[d] us to wonder about the precise scope of its holding." *Williams*, 194 F.3d at 105–06.

Bahlul argues that the Supreme Court's decision in *United States v. Arthrex, Inc.*, 141 S. Ct. 1970 (2021), compels us to reevaluate our ruling in *Bahlul V* that the convening authority is an inferior officer. Our consideration of that argument hinges on whether *Arthrex* effectively overruled or eviscerated *Bahlul V*. Because Bahlul's interpretation of *Arthrex* is merely arguable, we conclude that *Arthrex* does not "clearly dictate" a departure from our prior decision. *Old Dominion Elec. Coop.*, 892 F.3d at 1232 n.2. We therefore may not reconsider it here.

In *Bahlul V*, we relied on *Edmond v. United States*, 520 U.S. 651 (1997), to hold that the convening authority, Crawford, was an inferior officer. In *Edmond*, the Supreme Court considered three factors to determine that judges of the Coast Guard Court of Criminal Appeals, an intermediate court in the military-justice system, were inferior officers: degree of oversight, removability, and final decision-making authority. 520 U.S. at 662–65. First, the Court explained that "[w]hether one is an 'inferior' officer depends on whether he has a superior" and whether one's "work is directed and supervised at some level by" principal officers. *Id.* at 662–63. The Coast Guard judges were inferior because they were supervised by two sets of principal officers: the Coast Guard's Judge Advocate General, who prescribed the judges' rules and polices, and the CAAF. *Id.* at 664; *see also* 10 U.S.C. § 866(f). Second, the Court found it significant that the Judge Advocate General could remove the judges without cause, so long as it was not an "attempt to influence . . . the outcome of individual

13

proceedings." *Edmond*, 520 U.S. at 664 (citing 10 U.S.C. § 837). Third, the judges did not have final decision-making authority: The CAAF had the power to review the judges' rulings if the Judge Advocate General ordered it, if the CAAF granted a petition for review from the accused, or if the accused received a death sentence. *Id.* at 665. The CAAF's review was limited to determining whether "there is some competent evidence in the record to establish each element of the offense beyond a reasonable doubt" without reevaluating the facts. *Id.* But, the Court opined, "[w]hat is significant is that the judges of the [Coast Guard] Court of Criminal Appeals have no power to render a final decision on behalf of the United States unless permitted to do so by other Executive officers." *Id.*

Our opinion in *Bahlul V* specifically applied the three factors described in *Edmond* to conclude that Crawford was an inferior officer. 967 F.3d at 870–73. First, we explained that a principal officer, "the Secretary [of Defense,] maintains a degree of oversight and control over the Convening Authority's work through policies and regulations," including evidentiary standards and post-trial procedures. *Id.* at 872.[2] Next, we noted that "the bulk of the Convening Authority's decisions are not final" and "are subject to review by the CMCR," which is also composed of principal officers. *Id.* at 871. Finally, we explained that "the Convening Authority is removable at will by the Secretary," *id.* at 872, except that "no person may attempt to coerce or, by any unauthorized means, influence . . . the action of any convening, approving, or

---

[2]     *See also id.* (citing R.M.C. 104(a)(1) (2007) (prohibiting convening authority from censuring, reprimanding, or admonishing military commission, members, or judge); R.M.C. 407 (2007) (prescribing forwarding and disposition of charges); and R.M.C. 601(f) (2007) ("The Secretary of Defense may cause charges, whether or not referred, to be transmitted to him for further consideration, including, if appropriate, referral.")).

14

reviewing authority with respect to his judicial acts," *id.* at 873 (quoting 10 U.S.C. § 949b(a)(2)(B) (2006)). All those factors weighed in favor of concluding that the convening authority was an inferior officer. *Id.*

According to Bahlul, the *Arthrex* decision departed from the three-factor approach of *Edmond* and *Bahlul V* by elevating one factor — final decision-making authority — over the others. In *Arthrex*, the Supreme Court determined that the Patent Trial and Appeal Board's Administrative Patent Judges were unconstitutionally appointed under the Appointments Clause. 141 S. Ct. at 1985. In Bahlul's view, the Court determined that the Patent Judges were principal officers solely because they could make final, unreviewable decisions on patentability, which "is incompatible with their appointment by the Secretary to an inferior office." Pet'r's Br. 26 (quoting *Arthrex*, 141 S. Ct. at 1985). Bahlul thus reads *Arthrex* to hold that an officer's ability to exercise final decision-making authority is sufficient, by itself, to render her a principal officer. Here, he contends, the convening authority exercises that type of significant final authority. For instance, the convening authority may "approve, disapprove, commute, or suspend the sentence in whole or in part," 10 U.S.C. § 950b(c)(2)(C) (2006) (current version at *id.* § 950b(c)(3)(C)); "(A) dismiss any charge or specification by setting aside a finding of guilty thereto; or (B) change a finding of guilty to a charge to a finding of guilty to an offense that is a lesser included offense of the offense stated in the charge," *id.* § 950b(c)(C)(3) (2006). Those decisions are left to her "sole discretion," *id.* § 950b(c)(1), although the Secretary of Defense may issue regulations about their timing and process, *see id.* § 949a(a); *see also Bahlul V*, 967 F.3d at 871 ("[T]he bulk of the Convening Authority's decisions are not final."). Bahlul insists that, under the approach followed in *Arthrex*, the convening authority must be a principal officer.

15

Yet *Arthrex* does not "clearly dictate a departure" from our prior ruling that the convening authority is an inferior officer. *Old Dominion Elec. Coop.*, 892 F.3d at 1232 n.2. Despite the language in *Arthrex* emphasized by Bahlul, that case still considered each of the three factors that were central to *Edmond*: degree of oversight and removability, as well as final decision-making authority. *Arthrex*, 141 S. Ct. at 1980–83. The *Arthrex* Court compared the degree of supervision of the Patent Judges to that of the Coast Guard judges in *Edmond*, explaining that the Patent and Trademark Office Director had "administrative oversight" powers over the Patent Judges. *Id.* at 1980 (quoting *Edmond*, 520 U.S. at 664) (citing 35 U.S.C. §§ 3(a)(2)(A), (b)(6), 6(c), 314(a), 316(a)(4)). Indeed, the Court explicitly "reaffirm[ed] and appl[ied] the rule from *Edmond* that the exercise of executive power by inferior officers must at some level be subject to the direction and supervision of an officer nominated by the President and confirmed by the Senate." *Arthrex*, 141 S. Ct. at 1988. The Court also examined removability, concluding that the Patent Judges are not "'meaningfully controlled' by the threat of removal . . . because the Secretary can fire them . . . only 'for such cause as will promote the efficiency of the service.'" *Id.* at 1982 (quoting *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2203 (2020) and then 5 U.S.C. § 7513(a)). To be sure, the Court emphasized that "[w]hat was 'significant' to the outcome [in *Edmond*] — review by a superior executive officer — is absent" for the Patent Judges. *Id.* at 1981 (quoting *Edmond*, 520 U.S. at 665). The Patent Judges have unreviewable power to "issue decisions on patentability" or, in other words, "'to render a final decision on behalf of the United States' without any . . . review by their nominal superior or any other principal officer in the Executive Branch." *Id.* at 1980–81 (quoting *Edmond*, 520 U.S. at 665). But despite assigning the most weight to the factor of un-reviewability, the majority opinion

16

in *Arthrex* expressly disclaimed that its decision "set forth an exclusive criterion" to distinguish principal officers from inferior ones. *Id.* at 1985 (quoting *Edmond*, 520 U.S. at 661).[3]

Bahlul's argument that *Arthrex* determined that the Patent Judges were principal officers based solely on their final decision-making authority is plausible.  Indeed, one of the

---

[3]     Notably, *Arthrex* also confined its ruling to "the context of adjudication."  *Arthrex*, 141 S. Ct. at 1986.  It is not clear whether the role of the convening authority as challenged in this case falls within that narrow context.   Generally, adjudication involves the particularized determination of individual rights, resulting in an order.  *See Safari Club Int'l v. Zinke*, 878 F.3d 316, 332 (D.C. Cir. 2017) (citing *Londoner v. City and Cnty. of Denver,* 210 U.S. 373 (1908)); *cf.* 5 U.S.C. § 551(6), (7) (defining adjudication as "agency process for the formulation of an order" and an order as "the whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rule making but including licensing" under the Administrative Procedure Act).  We have noted that the MCA is a "system enacted to adjudicate" the rights of enemy belligerents.  *In re Al-Nashiri*, 835 F.3d 110, 122–23 (D.C. Cir. 2016); *see also Ortiz v. United States*, 138 S. Ct. 2165, 2170 (2018) (describing military court martial system as one "to adjudicate charges against service members").  But the role of the convening authority in that process is very different from the adjudicative one assigned to the patent judges in *Arthrex* or the Coast Guard judges in *Edmond*.  The convening authority under the MCA has duties that are not adjudicative, such as convening a military commission and selecting its members.  *See* 10 U.S.C. §§ 948h, 948i.  It is those functions that Bahlul appears to challenge in this case, claiming that the military commission that tried him was improperly *convened* by Crawford and so lacked jurisdiction.  Unlike the petitioners in *Arthrex* and *Edmond,* Bahlul's main argument is not that his case was *adjudicated* by an unconstitutionally appointed officer.  It is therefore unclear that Bahlul's claim falls within "the context of adjudication" that was addressed in *Arthrex*.  141 S. Ct. at 1986.

17

dissenting opinions in that case asserted, "[T]he majority suggests most of *Edmond* is superfluous: All that matters is whether the Director has the statutory authority to individually reverse Board decisions." *Arthrex*, 141 S. Ct. at 2002 (Thomas, J. dissenting); *see also id.* at 1997 (Breyer, J. dissenting) ("In my view, today's decision is both unprecedented and unnecessary."); Jennifer Mascott and John F. Duffy, *Executive Decisions After* Arthrex, 2021 Sup. Ct. Rev. 225, 228 (2021) ("*Arthrex* seems to mark a significant shift."). But that reading of the case is "not sufficiently clear" to justify overturning the law of the circuit, *Williams*, 194 F.3d at 102, given that the Court discussed all three *Edmond* factors and explicitly denied that it relied on any "exclusive criterion" to hold that the Patent Judges were principal officers. *Arthrex*, 141 S. Ct. at 1985 (quoting *Edmond*, 520 U.S. at 661). Bahlul has not shown that *Arthrex* "clearly" disavows or "eviscerates" the *Edmond* factors on which *Bahlul V* relied. Therefore, we have no occasion to reconsider our determination that the convening authority is an inferior officer.

**B. Resentencing**

Bahlul also challenges the CMCR's resentencing decision, arguing: (1) that the CMCR erred in resentencing Bahlul itself, instead of remanding to a military commission; and (2) that the CMCR erred in reaffirming his life sentence. We find his arguments unconvincing.

*1. Consideration by the CMCR*

We held in *Bahlul V* that the CMCR could properly assess Bahlul's sentence without remanding to a military commission.

18

*See Bahlul V*, 967 F.3d at 865–66.[4]  Nothing has changed that conclusion.  Instead of relying on our prior holding, however, the CMCR considered again whether to send the case to a military commission for resentencing by applying the four factors described in *United States v. Winckelmann*, 73 M.J. 11, 15–16 (C.A.A.F. 2013), *see Bahlul VI*, 603 F. Supp. 3d at 1168–71, *i.e.*: "(1) whether the defendant was tried by military judges; (2) whether there are 'dramatic changes' in the penalty the defendant is exposed to; (3) whether 'the nature of the remaining offenses capture the gravamen of criminal conduct included within the original offenses'; and (4) whether 'the remaining offenses are of the type that judges of the courts of criminal appeals should have the experience and familiarity with to reliably determine what sentence would have been imposed at trial.'"   *Bahlul V*, 967 F.3d at 866 (quoting *Winckelmann*, 73 M.J. at 15–16).

As in its previous decision, the CMCR explained that the first factor is of "limited relevance to military commissions as there is no option for sentencing by military judge alone."

---

[4]    Bahlul asserts that "this Court did not hold that resentencing was not required because CMCR's weighing of the *Winckelmann* factors was correct." Pet'r's Reply at 23.  He says that "[t]his Court held that CMCR 'properly applied' the *Winckelmann* factors – in the sense that it was correct to apply the *Winckelmann* factors." *Id.* (quoting *Bahlul V*, 967 F.3d at 865–67).  That is inaccurate.  We explicitly stated that "it was not an abuse of discretion to reevaluate Al Bahlul's sentence without remand to the military commission." *Bahlul V*, 967 F.3d at 866.  Similarly, Bahlul insists that we ordered the CMCR to apply a "beyond a reasonable doubt" standard in its evaluation of the *Winckelmann* factors on remand.  But since we never held that the CMCR had to consider those factors anew, we certainly did not determine that it needed to make that finding beyond a reasonable doubt. *See Bahlul V*, 967 F.3d at 866–67.

19

*Bahlul VI*, 603 F. Supp. 3d at 1169.[5]  It also again concluded
that the second, third, and fourth factors weighed against
remand because Bahlul continued to face the same maximum
sentence; the "gravamen" of all three crimes for which he was
tried was the same; the evidence concerning the vacated
convictions remained relevant; and conspiracy to commit war
crimes, like other forms of conspiracy, fell within the CMCR
judges' experience to consider.  *Id.* at 1169–71.  Thus, as in
*Bahlul V*, the CMCR properly resentenced Bahlul.  *See Bahlul
V*, 967 F.3d at 866.

Bahlul argues that the CMCR should have weighed in his
favor the second *Winckelmann* factor — concerning "dramatic
changes" in applicable penalties — because the nature of his
penalty has been altered by new factors, including his
ineligibility for parole and his placement in solitary
confinement.  But there has been no change with respect to
Bahlul's eligibility for parole — he had no right to parole at the
time he was first sentenced by the commission.  *See* Pet'r's Br.
43 (citing a parole policy enacted after his sentencing, Exec.
Order No. 13567, 76 Fed. Reg. 13277 § 1(a) (Mar. 7, 2011));
*see also Greenholtz v. Inmates of Neb. Penal & Corr. Complex*,
442 U.S. 1, 7 (1979) ("There is no constitutional or inherent
right of a convicted person to be conditionally released before
the expiration of a valid sentence.").  As for his solitary
confinement, that it is not a part of his sentence and so we lack

---

[5]     Bahlul contends that the CMCR's analysis of the first
*Winckelmann* factor varied from its previous decision, and that it
erred by determining the factor "ha[d] limited relevance." *Bahlul VI*,
603 F. Supp. at 1169.  We see no meaningful difference, however,
between this determination and the CMCR's previous conclusion
that the first factor was not dispositive, particularly when it again
concluded that the remaining factors weighed against resentencing
by members of a military commission. *See Bahlul V*, 967 F.3d at
866; *Al Bahlul*, 374 F. Supp. 3d at 1273.

20

jurisdiction to consider it here. *See Bahlul V*, 967 F.3d at 877 ("Al Bahlul must bring any challenges to the conditions of his confinement through a different mechanism — likely a petition for a writ of habeas corpus."); 10 U.S.C. § 950g(d).

Bahlul's remaining objections to resentencing by the CMCR repeat the arguments he raised in earlier appeals, and fail for the reasons stated in *Bahlul V*.

## 2. *Reaffirmance of Life Sentence*

When we reversed and remanded in *Bahlul V*, we instructed the CMCR to apply the standard of "harmless[ness] beyond a reasonable doubt" to determine whether Bahlul's life sentence remained appropriate for the conspiracy charge, despite his trial on additional charges that should not have been brought. *Bahlul V*, 967 F.3d at 866–67. The CMCR applied the correct standard and concluded that Bahlul's sentence for conspiracy would have been the same, irrespective of his erroneous trial on the vacated counts charging him with material support and solicitation of terrorism. *Bahlul VI*, 603 F. Supp. 3d at 1171–75.

The record supports the CMCR's decision. Because the gravamen of the dismissed offenses was reflected in the conspiracy charge, the CMCR correctly reasoned that the evidence introduced at trial would have been essentially the same for the conspiracy count alone. *Id.* at 1172; *see also United States v. Torres,* 60 M.J. 559, 570 (A.F. Ct. Crim. App. 2004) (determining sentence remained appropriate because military judge would have been presented with the same evidence absent vacated charges); *cf. United States v. Boone*, 49 M.J. 187, 197–98 (C.A.A.F. 1998) (explaining resentencing was necessary where constitutional error circumscribed the available record evidence). In returning the verdicts, the

21

military commission members made explicit findings about the objects of the conspiracy and the overt acts committed in its furtherance. *See Bahlul VI*, 603 F. Supp. 3d at 1172–73. The members determined that the conspiracy's "objects included murder of protected persons, murder in violation of the law of war, and attacking civilians," and that Bahlul's overt acts encompassed pledging fealty to Usama bin Laden, creating propaganda for al Qaeda, "arrang[ing] for a pledge of fealty or bayat to Usama bin Laden by two of the 9/11 terrorists" and "prepar[ing] the propaganda declarations, or martyr wills" of the same 9/11 terrorists. *Id.* In short, Bahlul's conspiracy conviction encompassed the same extraordinarily serious conduct that supported the dismissed counts of solicitation and lending material support to terrorists. *See United States v. Moffeit*, 63 M.J. 40, 41–42 (C.A.A.F. 2006) (considering severity of conduct underlying remaining charge). The CMCR also noted that Bahlul showed no remorse at sentencing, instead making a statement that praised the 9/11 attacks and al Qaeda. *See Bahlul VI*, 603 F. Supp. 3d at 1174. Thus, the CMCR did not abuse its discretion in finding any error related to the vacated counts harmless beyond a reasonable doubt.

Bahlul's arguments to the contrary are unavailing. Bahlul argues that the CMCR erroneously inferred from the record that he played a role in the 9/11 attacks. Pet'r's Br. 54–56. But the CMCR relied on the detailed factual findings by the members of the military commission, who concluded that Bahlul facilitated martyr wills and fealty pledges for terrorists involved in 9/11. *See* Conviction Worksheet 3–4, 7–8; *Bahlul VI*, 603 F. Supp. 3d at 1172–73. In determining what the commission members would have done absent the constitutional errors of charging Bahlul with material support and solicitation, there is no better evidence than the members' own findings of fact.

22

Bahlul also asserts that when the CMCR resentenced him, it relied on a speculative theory of the case that was never presented to the commission members, urging that the focus of the government's case at trial was its solicitation charge. Pet'r's Br. 56–57 (citing *United States v. Bennitt*, 74 M.J. 125, 128 (C.A.A.F. 2015) and *United States v. Miller*, 67 M.J. 385, 388 (C.A.A.F. 2009)). That argument is belied by Bahlul's conviction on the charge of conspiracy, and the detailed factual findings that supported that conviction. The cases cited by Bahlul are inapposite, for they involve resentencings where the intermediate appeals court improperly determined that a defendant could have been convicted of an offense that was not charged or relied on a theory that was not presented at trial. *See Bennitt*, 74 M.J. at 127–128; *Miller*, 67 M.J. at 388–89.

Finally, Bahlul raises a new argument based on an amendment to the MCA that was enacted after his trial, but before the briefing in his first appeal to the CMCR was complete. That amended provision prohibits any evidence "obtained by the use of torture *or* by cruel, inhuman, or degrading treatment" from being admitted in trials by a military commission. 10 U.S.C. § 948r(a) (emphasis added); *see also* Military Commissions Act of 2009, Pub. L. No. 111-84, 123 Stat. 2190, 2580 (2009). Under the amended provision

> [a] statement of the accused may be admitted in evidence in a military commission under this chapter only if the military judge finds (1) that the totality of the circumstances renders the statement reliable and possessing sufficient probative value; and (2) that (A) the statement was made incident to lawful conduct during military operations at the point of capture or during closely related active combat engagement, and the interests of justice would

23

> best be served by admission of the statement
> into evidence; or (B) the statement was
> voluntarily given.

*Id.* § 948r(c) (cleaned up). Those requirements are stricter than the rules that were in place at the time of Bahlul's trial. *See id.* § 948r (2006). Bahlul claims that most of the trial evidence against him was drawn from his custodial statements, and that such evidence was improperly admitted because the military judge did not make the findings that the amended provision requires. Thus, Bahlul argues, we should order resentencing by the military commission to ensure that his sentence is not based on evidence procured by torture.

The government responds that Bahlul cannot raise this argument because he has not previously objected to the introduction of the evidence that allegedly was unlawfully obtained — either at trial or at any time before this most recent remand. Gov't Br. 26–30. We agree. "[W]here an argument could have been raised on an initial appeal, it is inappropriate to consider that argument on a second appeal following remand," absent exceptional circumstances like a change in law between appeals. *United States v. Henry*, 472 F.3d 910, 913 (D.C. Cir. 2007) (quoting *Nw. Ind. Tel. Co. v. FCC*, 872 F.2d 465, 470 (D.C. Cir. 1989)); *accord United States v. Brice*, 748 F.3d 1288, 1289 (D.C. Cir. 2014). Bahlul could have raised the change in law, or other similar objections, in his initial appeal to the CMCR or during the extensive proceedings since then. He did not. On the most recent remand to the CMCR, he questioned the admissibility of the statements in his opening brief but did not argue that § 948r barred their admission until his reply. *See* Appellant Br. 7, 44 n.4, *United States v. Bahlul,* No. 20-002 (USCMCR Dec. 20, 2021); Appellant Reply Br. 4, *United States v. Bahlul,* No. 20-002 (USCMCR Jan. 26, 2022). And previously, he noted that much

24

of the trial evidence was based on his custodial statements but also did not cite § 948r or argue that the military commission should not have considered those statements.  *See, e.g.*, Appellant Br. 7–8, *United States v. Bahlul*, No. 16-002 (USCMCR Jan. 2, 2017).  Accordingly, his arguments on this point are forfeited.

\*    \*    \*

For the foregoing reasons, we affirm the CMCR's decision.  We decline to revisit our prior ruling that the convening authority is an inferior officer because the intervening Supreme Court case cited by Bahlul does not clearly dictate a departure from our circuit's precedent.  Finding no error or abuse of discretion in Bahlul's resentencing, we also uphold his sentence of life imprisonment.

*So ordered.*