## ORAL ARGUMENT NOT YET SCHEDULED
## No. 22-1097

## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

ALI HAMZA AHMAD SULIMAN AL BAHLUL,

*Petitioner.*

*v.*

UNITED STATES OF AMERICA,

*Respondent.*

ON PETITION FOR REVIEW FROM A DECISION OF
THE COURT OF MILITARY COMMISSION REVIEW

**BRIEF OF THE CENTER FOR VICTIMS OF TORTURE, CLAIRE FINKELSTEIN, DAVID GLAZIER, KAREN J. GREENBERG, JONATHAN HAFETZ, LISA HAJJAR, KATHERINE HAWKINS, GAIL HELT, SANFORD V. LEVINSON, DAVID LUBAN, ELISA MASSIMINO, JUAN MÉNDEZ, ALBERTO MORA, MANFRED NOWAK, JOHN T. PARRY, GABOR RONA, AND PHILIPPA WEBB AS AMICI CURIAE IN SUPPORT OF PETITIONER**

John S. Summers
Andrew M. Erdlen
Alexander J. Egerváry
Michael J. Masciandaro
HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER
One Logan Square, 27th Floor
Philadelphia, PA 19103
(215) 568-6200
jsummers@hangley.com
aerdlen@hangley.com
aegervary@hangley.com
mmasciandaro@hangley.com

Dated: November 28, 2022          *Counsel for Amici*

## CERTIFICATE OF PARTIES, RULINGS, AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1), undersigned counsel for amici

curiae certify as follows:

A.   <u>Parties and Amici</u>.  Except for the following, all parties, intervenors, and amici appearing before this Court, and the trial court, are listed in the Brief for Petitioner:

  a.   The Center for Victims of Torture;

  b.   Claire Finkelstein;

  c.   David Glazier;

  d.   Karen J. Greenberg;

  e.   Jonathan Hafetz;

  f.   Lisa Hajjar;

  g.   Katherine Hawkins;

  h.   Gail Helt;

  i.   Sanford V. Levinson;

  j.   David Luban;

  k.   Elisa Massimino;

  l.   Juan Méndez;

  m.   Alberto Mora;

  n.   Manfred Nowak;

  o.   John T. Parry;

  p.   Gabor Rona; and

  q.   Philippa Webb.

B.     <u>Rulings Under Review</u>.  An accurate statement of references to the rulings under review in this appeal appear in the Brief for Petitioner.

C.     <u>Related Cases</u>.  An accurate statement of related cases appears in the Brief for Petitioner.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Circuit Rule 26.1, amicus curiae The Center for Victims of Torture hereby submits this corporate disclosure statement.

The Center for Victims of Torture ("CVT") is a non-profit, non-governmental organization incorporated under Minnesota law.  CVT's general nature and purpose is to heal the wounds of torture on individuals, their families, and their communities, and to prevent and stop torture worldwide.  CVT has no parent corporation, and no publicly-held company has 10% or greater ownership in CVT.

## CERTIFICATION PURSUANT TO CIRCUIT RULE 29(d) AND STATEMENT REGARDING CONSENT TO FILE

Pursuant to Circuit Rule 29(d), amici and their counsel certify that a separate brief is necessary to provide the perspective of individuals and nongovernmental entities who are experts in the prohibition of torture—including providing rehabilitation services to survivors of torture—and who seek to prevent the use of torture worldwide.

All parties consent to the filing of this brief.

# **TABLE OF CONTENTS**

**Page**

INTEREST OF AMICI AND STATEMENT OF AUTHORSHIP ....................1

INTRODUCTION AND SUMMARY OF ARGUMENT................................. 4

ARGUMENT.............................................................................................. 6

I.  UNDER INTERNATIONAL LAW, TORTURE IS
CATEGORICALLY PROHIBITED, AND THE ONLY EXCEPTION
FOR THE USE OF EVIDENCE OBTAINED BY TORTURE IS FOR
USE AGAINST ACCUSED TORTURERS ......................................... 6

    A.  The Use of Torture Violates a *Jus Cogens* Prohibition Under
International Law.................................................................... 6

    B.  The Use of Evidence Obtained by Torture Is Prohibited
Under International Law......................................................... 8

        1.  International Authorities Uniformly Prohibit the Use
of Evidence Obtained by Torture ..................................... 9

        2.  International Law Prohibits the Use of Evidence
Obtained by Torture at All Stages of a Proceeding,
Including During Post-Trial and Sentencing ..................13

II.  UNDER UNITED STATES LAW, THE USE OF EVIDENCE
OBTAINED BY TORTURE IS CATEGORICALLY PROHIBITED ..... 18

CONCLUSION.......................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A (FC) (Appellants) v. Secretary of State for the Home Department (Respondent) (2004)*, UKHL 71 (UK 2005) ......................16

*Abdulkadyrov and Dakhtayev v. Russia,*
App. No. 35061/04, 80 Eur. Ct. H.R. (2018)............................................12

*Al-Adsani v. United Kingdom,*
App. No. 35763/97, 30 Eur. Ct. H.R. (2001) ...........................................12

*Al-Nashiri v. Poland,*
App. No. 28761/11, 564 Eur. Ct. H.R. (2014) .........................................12

*Al-Nashiri v. Romania,*
App. No. 33234/12, 718 Eur. Ct. H.R. (2018)...........................................12

*Ashcraft v. Tennessee,*
322 U.S. 143 (1944) ...................................................................................19

*Bokhonko v. Georgia,*
App. No. 6739/11, Eur. Ct. H.R. (2020) .................................................. 11

*Boudreau v. The King,*
S.C.R. 262, 269-270 (Can. 1949) ............................................................16

*Brown v. Mississippi,*
297 U.S. 278 (1936) .......................................................................... 18, 19

*Chambers v. Florida,*
309 U.S. 227 (1940)..................................................................................20

*Colorado v. Connelly,*
479 U.S. 157 (1986)..................................................................................20

*Ćwik v. Poland,*
App. No. 31454/10, 75 Eur. Ct. H.R. (2020) .......................................... 11

Document No. 1947508, Letter from J. Palmer to M. Langer, *In re: Abd Al-Rahim Hussein Muhammed Al-Nashiri*, No. 21-1208, Response to Letter under Fed. R. App. P. 28(j) ............................ 23

*France v. Diab*, NCA 374, 234, 236-237 (Can. Ont. C.A. 2014) ...................16

*G.K. v. Switzerland*,
Communication No. 219/2002, U.N. Doc. CAT/C/30/D/219/2002, (U.N. Comm. Against Torture 2003) ........................................................................................................14

*Habib v. Nationwide News Pty. Ltd.*,
[2010] NSWCA 34, 284, 266-267 (Austl. 2010) .....................................16

*Horvath v. The Queen*,
S.C.R. 376, 424-425 (Can. 1979) ............................................................16

*Husayn (Abu Zubaydah) v. Poland*,
App. No. 7511/13, 554 Eur. Ct. H.R. (2015) .............................................12

*Ibrahim and Others v. United Kingdom*,
App. No. 50541/08, 254 Eur. Ct. H.R. (2016) ......................................... 11

*Jackson v. Denno*,
378 U.S. 368 (1964) ................................................................................ 20

*Kaçiu v. Albania*,
App. No. 33192/07 & 33194/07, 117 Eur. Ct. H.R. (2013) ...................... 11

*Lego v. Twomey*,
404 U.S. 477 (1972) ................................................................................ 20

*Mahjoub v. Canada (Minister of Citizenship and Immigration)*,
[2006] F.C. 1503, 26 (Fed. Ct. Can. 2006) ..............................................16

*Mansurov and Others v. Russia*,
App. No. 4336/06, 241 Eur. Ct. H.R. (2021) ........................................... 11

*Missouri v. Seibert*,
542 U.S. 600 (2004) ............................................................................... 20

*Mthembu v. The State*,
2008 (2) SACR 407 (SCA), ¶ 32 (S. Afr. 2008) ......................................16

- iii -

*Orazbayev and Others v. Russia*,
  App. No. 15367/07, 132 Eur. Ct. H.R. (2021) ....................................11, 16

*Othman (Abu Qatada) v. United Kingdom*,
  App. No. 8139/09, 264, 267 Eur. Ct. H.R. (2012) ........................... 12, 13

*Petukhov v. Russia*,
  App. No. 17853/09, Eur. Ct. H.R. (2021) ................................................11

*Prosecutor v. Al Hassan*,
  ICC-01/12-01/18-1508 (2021) ..................................................................12

*Prosecutor v. Furundzija*,
  Case No. IT-95-17/1, Trial Chamber Judgment, 153-54 (Int'l
  Crim. Trib. for the Former Yugoslavia Dec. 10, 1998)............................12

*R. (Binyam Mohamed) v. Secretary of State for Foreign and
Commonwealth Affairs (No. 1)*,
  [2008] EWHC 2048 (UK 2008)................................................................16

*R. v. Gregory John Alsford*,
  [2017] NZSC 42, 92 (N.Z. 2017) .............................................................16

*Ramiro Ramírez Martínez et al v. Mexico*,
  Communication No. 500/2012, U.N. Doc.
  CAT/C/55/D/500/2012, (U.N. Comm. Against Torture 2015)...............14

*Ras Al Khaimah Inv. Auth. v. Azima*,
  [2021] EWCA Civ 349, 41 (UK 2021)......................................................16

*Rochin v. California*,
  342 U.S. 165 (1952)..................................................................................19

*Sarobe v. France*,
  Communication No. 675/2015, U.N. Doc.
  CAT/C/62/D/675/2015, (U.N. Comm. Against Torture 2018)...............14

*Schneckloth v. Bustamonte*,
  412 U.S. 218 (1973) .................................................................................21

*Shagang Shipping Co. Ltd. v. HNA Grp. Ltd.*,
  [2020] UKSC 34 (UK 2020)....................................................................16

*The Queen v. Fitton*,
    S.C.R. 958, 958 (Can. 1956)....................................................................16

*U.S. v. Al-Nashiri*,
    No. 21-1208 (D.C. Cir.) ..............................................................21, 22, 23

*Ubamaka Edward Wilson v. Secretary for Security and Another*,
    [2012] HKCFA 87, ¶ 7 (Hong Kong 2012) ................................................17

*United States v. Karake*,
    443 F. Supp. 2d 8 (D.D.C. 2006)..............................................................21

*Uspanov v. Russia*,
    App. No. 48053/06, 241 Eur. Ct. H.R. (2021).........................................11

*Yong Vui Kong v. Public Prosecutor*,
    [2015] 2 SLR 1129, 64 (Sing. 2015)..........................................................17

## Rules and Statutes

CAT Article 15....................................................................9, 10, 13, 14, 15, 18

Federal Rule of Appellate Procedure 28(j).................................................. 22

Military Commissions Act of 2009 .......................................................21, 24

Rule 95 ........................................................................................................12

Rule 162.......................................................................................................12

10 U.S.C. § 948(a)............................................................ 4, 5, 17, 18, 19, 21

## Other Authorities

African Charter on Human and Peoples' Rights, art. 5................................. 7

African Commission on Human and Peoples' Rights, *Principles and Guidelines on the Right to a Fair Trial and Legal Assistance in Africa* (2003)...............................................................11, 13

African Commission on Human and Peoples' Rights ["Afr. Comm'n H.P.R."], 212 (Mar. 1, 2011) ...................................................... 10

Amal Alamuddin, "Collection of Evidence," in *Principles of Evidence in International Criminal Justice* (Karim A. Khan ed., 2010) ...................................................................12

Amal Clooney & Philippa Webb, *The Right to a Fair Trial in International Law* (2020) ...................................................... 10

American Convention on Human Rights, art. 5 ............................................ 7

American Convention on Human Rights, Nov. 22, 1969, S. Treaty Doc. No. 95-21, 1144 U.N ............................................. 7

*Cabrera García v. Mexico*, Preliminary Objection, Merits, Reparations and Costs, Inter-Am. Ct. H.R. (ser. C) No. 220 (Nov. 26, 2010) ..................................................... 10, 11

Comm. on Foreign Relations, Convention Against Torture and Other Cruel, Inhuman Or Degrading Treatment Or Punishment, S. Exec. Rep. No. 101-30 ...................................19

Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, opened for signature Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N. ............................. 6

Convention for the Protection of Human Rights and Fundamental Freedoms, art. 3 ................................................. 7

Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, art. 2 opened for signature Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85, art. 2(2).Article 2 ................................... 6

David Luban, *Torture, Power, and Law* (2014) .........................................19

*Egyptian Initiative for Personal Rights and Interights v.Egypt*, Communication 334/06, African Comm'n on Human & Peoples' Rights (Mar. 1, 2011) ............................... 10

*García Cruz y Sánchez Silvestre v. México*, Merits, Reparations and Costs, Inter-Am. Ct. H.R. (ser. C) No. 273, 58 (Nov. 26, 2013) ..................................................... 11

- vi -

Giuliana Monina, "Convention Against Torture and Other
    Cruel, Inhuman or Degrading Treatment or Punishment,
    Part I Substantive Articles, Art. 15 Non-Admissibility of
    Evidence Obtained by Torture," in *The United Nations
    Convention Against Torture And Its Optional Protocol:  A
    Commentary* (Manfred Nowak, Moritz Birk, & Giuliana
    Monina, eds., 2019) ..................................................................................14

Inter-American Convention to Prevent and Punish Torture,
    Dec. 9, 1985, 67 O.A.S.T.S., Art. 10...........................................................13

International Covenant on Civil and Political Rights, art. 4,
    opened for signature Dec. 16, 1966, S. Exec. Doc. C, D, E, F,
    95-2, 999 U.N.T.S. 171 ............................................................................ 6

International Covenant on Civil and Political Rights, art. 7....................7, 10

International Covenant on Civil and Political Rights, art. 14......................14

Int'l Criminal Tribunal for the former Yugoslavia, *Rules of
    Procedure and Evidence*, entered into force Mar. 14, 1994,
    amendments adopted Jan. 8, 1996, U.N. Doc. IT/32/Rev.7
    (1996)....................................................................................................12

Int'l Criminal Tribunal for Rwanda, *Rules of Procedure and
    Evidence*, entered into force June 29, 1995, U.N. Doc.
    ITR/3/REV.1 (1995) ...............................................................................12

Juan Méndez, *Report of the Special Rapporteur on torture and
    other cruel, inhuman or degrading treatment or
    punishment*.............................................................................................15

Letter dated July 18, 2022, from P. Hyun, Acting Assistant
    Attorney General, Office of Legislative Affairs, Dep't of
    Justice; T. Mancinelli, Acting Assistant Secretary for
    Legislative Affairs, Dep't of Defense; and N. Durakoglu,
    Assistant Secretary, Bureau of Legislative Affairs, Dep't of
    State to Sens. R. Durbin and P. Leahy,
    https://www.judiciary.senate.gov/imo/media/doc/2022.07.
    18-OUT-Durbin-Leahy-Military%20Mistreatment.pdf .........................24

*Omar Humberto Maldonado Vargas and Others v. Chile*,
    Merits, Reparations and Costs, Inter-Am. Ct. H.R. (ser. C)
    No. 300, 118 (Sept. 2, 2015).......................................................11

President Ronald Reagan's Message to the Senate Transmitting
    the Convention Against Torture and Inhuman Treatment or
    Punishment, (May 20, 1988),
    https://www.reaganlibrary.gov/archives/speech/message-
    senate-transmitting-convention-against-torture-and-
    inhuman-treatment-or ..............................................................8

*Principles of Evidence in International Criminal Justice*
    (Karim A. Khan ed., 2010).........................................................12

Principles on Effective Interviewing for Investigations and
    Information Gathering, (May 2021),
    https://interviewingprinciples.com .........................................13

*Report by the Council of Europe Commissioner for Human*
    *Rights on His Visit to the United Kingdom in November*
    *2004*, Doc. CommDH(2005)6, ¶ 27 (June 8, 2005) ...............17

*Report of the Special Rapporteur on torture and other cruel,*
    *inhuman or degrading treatment or punishment*, 22, U.N.
    Doc A/HRC/25/60 (Apr. 10, 2014) ..........................................9

*Report of the Special Rapporteur on torture and other cruel,*
    *inhuman or degrading treatment or punishment, Follow up*
    *report: Missions to the Republic of Tajikistan and Tunisia*,
    75, U.N. Doc. A/HRC/28/68/Add.2 (February 27, 2015)......15

*Report of the United States of America to the United Nations*
    *Committee Against Torture* (Aug. 5, 2013)............................24

*Report of the United States of America to the UN Committee*
    *Against Torture* (Sept 24, 2021) .............................................8

*Resolution on Guidelines and Measures for the Prohibition and*
    *Prevention of Torture, Cruel, Inhuman or Degrading*
    *Treatment or Punishment in Africa*, 32nd Session .................13

Rome Statute of the Int'l Criminal Court art. 69,
    entered into force July 1, 2002, 2187 U.N.T.S. 90...................12

S. Prt. 110-54, Inquiry into the Treatment of Detainees in U.S. Custody, 110th Cong., 2nd sess., (Nov. 20, 2008) ................................... 4

Special Court for Sierra Leone, *Rules of Procedure and Evidence*, adopted on Jan. 16, 2002, amended on Oct. 20, 2020 (2020) ........................................................................12

Special Tribunal for Lebanon, *Rules of Procedure and Evidence*, adopted on Mar. 20, 2009, amended on Dec. 18, 2020, Doc. STL-BD-2009-01-Rev.11 (2020)...........................................12

United Nations General Assembly Resolution 217 (III).............................. 7

U.N. Comm. Against Torture, *Concluding observations on the third periodic report of Benin*, U.N. Doc. CAT/C/BEN/CO/3 (June 4, 2019) ........................................................................ 10

U.N. Comm. Against Torture, *Concluding observations on the initial report of Maldives*, U.N. Doc. CAT/C/MDV/CO/1 (December 19, 2018)...................................................................... 9

U.N. Comm. Against Torture, *Concluding observations on the fourth periodic report of Mauritius*, U.N. Doc. CAT/C/MUS/CO/4 (December 22, 2017) ............................................. 10

U.N. Comm. Against Torture, *Concluding observations on the second periodic report of Namibia*, U.N. Doc. CAT/C/NAM/CO/2 (February 1, 2017)...................................................... 9

U.N. Comm. against Torture, *Concluding observations on the initial report of Niger*, U.N. Doc. CAT/C/NER/CO/1 (Dec. 20, 2019)............................................................................ 10

U.N. Comm. Against Torture, *Concluding observations on the initial report of Seychelles*, U.N. Doc. CAT/C/SYC/CO/1 (September 28, 2018) .................................................................. 9

U.N. Comm. Against Torture, *Concluding observations on the initial report of Vietnam*, U.N. Doc. CAT/C/VNM/CO/1 (December 28, 2018) .................................................................. 9

U.N. Comm. Against Torture, *Summary Record of the First Part of the 354th Meeting* .....................................................................15

Universal Declaration of Human Rights, art. 5 ............................................. 7

U.N. Human Rights Comm., *General Comment No. 32: Article 14 (Right to equality before courts and tribunals and to a fair trial)*, U.N. Doc. CCPR/C/GC/32 (Aug. 23, 2007) ......................... 10

U.N. Office of the High Commissioner for Human Rights in cooperation with the International Bar Association, *Human Rights in the Administration of Justice: A Manual on Human Rights for Judges, Prosecutors, and Lawyers*, U.N. Doc. HR/P/PT/9 (2003) ....................................................................... 16

U.S. Const. amend. XIV ............................................................................. 20

U.S. Dep't of State, *Submission to the Committee against Torture of the Sixth Periodic Report on the International Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment* (Sept. 24, 2021) ......................... 24

Vienna Convention on the Law of Treaties, art. 53, May 23, 1969, 1155 U.N.T.S. 331 ............................................................. 6

# GLOSSARY

CAT..........................................................  United Nations Convention
against Torture and Other Cruel,
Inhuman or Degrading Treatment
or Punishment, Dec. 10, 1984

CIDT ........................................................ Cruel, Inhuman, or Degrading
Treatment

CMCR ..................................................... Court of Military Commission
Review

CVT.......................................................... The Center for Victims of Torture

ICCPR...................................................... International Covenant on Civil
and Political Rights

ICC ........................................................ International Criminal Court

MCA......................................................... Military Commissions Act of
2009, Pub. L. 111-84, 123 Stat.
2574, 10 U.S.C. § 948a, *et seq.*

Section 948r(a) ....................................... 10 U.S.C. § 948(a)

**INTEREST OF AMICI AND STATEMENT OF AUTHORSHIP**

Amici are the following nongovernmental organizations and individuals, with deep expertise on the prohibition of torture, who seek to help the Court better understand the harms caused by torture-obtained evidence, including its effect on the American legal system:[1]

**The Center for Victims of Torture** is the oldest and largest torture survivor rehabilitation center in the U.S. (https://www.cvt.org);

**Claire Finkelstein**, Algernon Biddle Professor of Law and Professor of Philosophy, University of Pennsylvania Carey Law School;

**David Glazier**, Professor of Law, Loyola Law School; retired U.S. Navy surface warfare officer;

**Karen J. Greenberg**, Director, Center on National Security, Fordham Law School;

**Jonathan Hafetz**, Professor of Law, Seton Hall University School of Law;

**Lisa Hajjar**, Professor of Sociology, University of California, Santa Barbara;

---

[1] Pursuant to Circuit Rule 29(a)(4)(E), no counsel for a party authored the brief in whole or in part. No party or a party's counsel contributed money that was intended to fund preparing or submitting this brief. No person—other than the amici curiae, their members, or their counsel—contributed money that was intended to fund preparing or submitting the brief.

**Katherine Hawkins**, Senior Legal Analyst, Project On Government Oversight; former investigator, Constitution Project Task Force on Detainee Treatment;

**Gail Helt**, former intelligence officer, CIA; Director, Security and Intelligence Studies Program, King University, Bristol, TN;

**Sanford V. Levinson**, W. St. John Garwood and W. St. John Garwood, Jr. Centennial Chair in Law, Professor of Government, University of Texas Law School;

**David Luban**, Distinguished University Professor and Professor of Law, Georgetown University Law Center;

**Elisa Massimino**, Visiting Professor of Law and Executive Director, Human Rights Institute, Georgetown University Law Center;

**Juan Méndez**, former UN Special Rapporteur on Torture (2010-2016);

**Alberto Mora**, former General Counsel of the Navy (2001-2006);

**Manfred Nowak**, Secretary General of the Global Campus of Human Rights (Venice) and Professor of International Human Rights at Vienna University; former UN Special Rapporteur on Torture (2004-2010);

**John T. Parry**, Associate Dean of Faculty and Edward Brunet Professor of Law, Lewis & Clark Law School;

**Gabor Rona**, Professor of Practice, Cardozo Law School; former Legal Advisor, International Committee of the Red Cross; and

**Philippa Webb**,   Professor of Public International Law, Director of the Centre for International Governance and Dispute Resolution (CIGAD), Senior Tutor in Law, King's College London, The Dickson Poon School of Law.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The prohibition on the use of evidence obtained by torture, in any proceeding, at any stage, for any purpose (save for against alleged torturers), is clear and unambiguous—in international law, treaties to which the United States is a party, longstanding domestic law, and Section 948r of the Military Commissions Act of 2009 ("MCA"). The United States government agrees.

Petitioner Ali Hamza Ahmad Suliman Al Bahlul was one of the first men transferred to the detention facility at U.S. Naval State Guantánamo Bay Cuba, which the United States opened in January 2002.  It is well-documented, including by the United States Senate Committee on Armed Services,[2] that torture and cruel, inhuman or degrading treatment ("CIDT") of detainees was pervasive at Guantánamo.  Petitioner credibly alleges, and there is a substantial basis to believe, that he was among the men subjected to torture and CIDT at Guantánamo – indeed, prosecutors in his original military commission case effectively corroborated that allegation[3] – and that he is now imprisoned pursuant to a sentence that was imposed, at least

---

[2] S. Prt. 110-54, Inquiry into the Treatment of Detainees in U.S. Custody, 110th Cong., 2nd sess., at 1 (Nov. 20, 2008).

[3] *See* Petitioner's Brief (Dkt. No. 22-1097, Doc. No. 1973618) at 5, 14.

- 4 -

in part, on the basis of statements he made under torture and CIDT.  The government does not dispute those allegations.

Notwithstanding the clear prohibition on the use of evidence obtained by torture in international law, treaties to which the United States is party, the unambiguous language of Section 948r(a) of the Military Commissions Act of 2009, and the U.S. government's repeated representations that such evidence is inadmissible, the Court of Military Commission Review ("CMCR") apparently relied on statements made by Petitioner that were elicited by the use of torture.

This Court must not sanction such a manifest injustice and clear violation of the prohibition on torture's exclusionary rule.  If the Court does not vacate the judgment below on other grounds, it should remand for resentencing.  Because the United States has clearly and repeatedly recognized that the prohibition on using torture-obtained evidence is categorical and applies at all stages of a military commission case, and to satisfy its affirmative duty to ensure that the prohibition has not been violated, it should join in this aspect of Petitioner's request for relief.

**ARGUMENT**

I.   **UNDER INTERNATIONAL LAW, TORTURE IS CATEGORICALLY PROHIBITED, AND THE ONLY EXCEPTION FOR THE USE OF EVIDENCE OBTAINED BY TORTURE IS FOR USE AGAINST ACCUSED TORTURERS**

   A.   **The Use of Torture Violates a *Jus Cogens* Prohibition Under International Law**

The prohibition of torture is a *jus cogens* norm of international law. It is a fundamental rule from which no derogation is permitted.[4]  There are no exceptions for the use of torture; it is prohibited even during public emergencies that "threaten[] the life of the nation."[5]

An abundance of international legal authority reflects this unconditional prohibition.  Article 2 of the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT") – which has 173 state parties, including the United States – provides that "[n]o exceptional circumstances whatsoever, whether a state of war or a threat of war, internal political instability or any other public emergency, may be invoked as a justification of torture."[6]

---

[4] Vienna Convention on the Law of Treaties, art. 53, May 23, 1969, 1155 U.N.T.S. 331.

[5] International Covenant on Civil and Political Rights, opened for signature Dec. 16, 1966, S. Exec. Doc. C, D, E, F, 95-2, 999 U.N.T.S. 171, art. 4.

[6] Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, opened for signature Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85, art. 2(2).

The prohibition is expressly codified in other international instruments, including Article 7 of the International Covenant on Civil and Political Rights ("ICCPR") and Article 5 of the Universal Declaration of Human Rights.  It is also enshrined in regional human rights treaties, like Article 3 of the Convention for the Protection of Human Rights and Fundamental Freedoms ("European Convention on Human Rights"), and Article 5 of both the American Convention on Human Rights and the African Charter on Human and Peoples' Rights.[7]

In his May 20, 1988 letter to the United States Senate transmitting CAT for advice and consent, President Ronald Reagan recalled that "[t]he United States participated actively and effectively in the negotiation of the Convention," and that "[r]atification of the Convention by the United States will clearly express [the] United States['] opposition to torture, an

---

[7] Universal Declaration of Human Rights, G.A. Res. 217 (III) A, art. 5, U.N. Doc. A/RES/217(III) (Dec. 10, 1948) ("No one shall be subjected to torture or to cruel, inhuman or degrading treatment or punishment."); European Convention on Human Rights art. 3, Nov. 4, 1950, E.T.S. No. 5, 213 U.N.T.S. 221 ("No one shall be subjected to torture or to inhuman or degrading treatment or punishment."); *see also, e.g.*, American Convention on Human Rights, Nov. 22, 1969, S. Treaty Doc. No. 95-21, 1144 U.N.T.S.123, O.A.S.T.S. No. 36, Art. V, S.2 ("No one shall be subjected to torture or to cruel, inhuman, or degrading punishment or treatment.  All persons deprived of their liberty shall be treated with respect for the inherent dignity of the human person."); African Charter on Human and Peoples' Rights art. 5, June 27, 1981, 1520 U.N.T.S. 217 ("All forms of exploitation and degradation of man particularly slavery, slave trade, torture, cruel, inhuman or degrading punishment and treatment shall be prohibited.").

abhorrent practice unfortunately still prevalent in the world today."[8]  The United States reiterated that position in its September 2021 submission to the UN Committee Against Torture, the body that monitors states' compliance with CAT:  "the prohibition of torture is a peremptory norm of international law, from which no derogation is permitted, reflecting the condemnation of torture by the international community of States as a whole."[9]  The United States confirmed that it "is committed to performing its obligations under the Convention."[10]

### B. The Use of Evidence Obtained by Torture Is Prohibited Under International Law

A corollary to the international prohibition of torture is the prohibition of the *use of evidence* obtained by torture.  The latter, just like the former, is expressly forbidden under international law.  There is only

---

[8] President Ronald Reagan's Message to the Senate Transmitting the Convention Against Torture and Inhuman Treatment or Punishment (May 20, 1988), https://www.reaganlibrary.gov/archives/speech/message-senate-transmitting-convention-against-torture-and-inhuman-treatment-or.

[9] U.S. Dep't of State, Submission to the Committee against Torture of the Sixth Periodic Report on the International Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ¶ 2 (Sept. 24, 2021) [hereinafter Sixth Periodic Report] (citing previous statements including Reply of the Government of the United States of America to the Report of the Five UNCHR Special Rapporteurs on Detainees in Guantanamo Bay, Cuba, at 12 (March 10, 2006)); *see also* Draft Articles on State Responsibility, Comments of the Government of the United States of America, 3 (March 1, 2001); Draft Articles on State Responsibility, Comments of the Government of the United States of America, 6 (Oct. 22, 1997).

[10] Sixth Periodic Report, *supra* note 9, ¶ 2.

one narrow exception:  evidence obtained through the use of torture may be used to prove the fact of torture itself against accused torturers.[11]  This broad prohibition applies to *all* legal proceedings, post-trial or sentencing proceedings included, without exception.

### 1.    International Authorities Uniformly Prohibit the Use of Evidence Obtained by Torture

International treaties, international courts, and other international authorities all reflect the fundamental prohibition on evidence obtained from torture.  For example, CAT Article 15 provides:

> Each State Party shall ensure that any statement which is established to have been made as a result of torture shall not be invoked as evidence in any proceedings, except against a person accused of torture as evidence that the statement was made.

The UN Committee Against Torture has called for courts to dismiss cases in which evidence is obtained through torture,[12] and it has expressly asked

---

[11] *See* Juan E. Méndez (Special Rapporteur on torture and other cruel, inhuman or degrading treatment or punishment), *Report of the Special Rapporteur on torture and other cruel, inhuman or degrading treatment or punishment*, 22, U.N. Doc A/HRC/25/60 (Apr. 10, 2014).

[12] U.N. Comm. Against Torture, *Concluding observations on the second periodic report of Namibia*, 21, U.N. Doc. CAT/C/NAM/CO/2 (Feb. 1, 2017); U.N. Comm. Against Torture, *Concluding observations on the initial report of Vietnam*, 29, U.N. Doc. CAT/C/VNM/CO/1 (Dec. 28, 2018); U.N. Comm. Against Torture, *Concluding observations on the initial report of Maldives*, 40, U.N. Doc. CAT/C/MDV/CO/1 (December 19, 2018); U.N. Comm. Against Torture, *Concluding observations on the initial report of Seychelles*, 15, U.N. Doc. CAT/C/SYC/CO/1 (Sept. 28, 2018).

states to ensure that a confession obtained through torture is

inadmissible.[13]

The same is true of the ICCPR.  Its implementing body, the UN

Human Rights Committee, emphasizes that no statements or confessions or

other evidence obtained in violation of ICCPR Article 7

> may be invoked as evidence in any proceedings
> covered by article 14, including during a state of
> emergency, except if a statement or confession
> obtained in violation of article 7 is used as evidence
> that torture or other treatment prohibited by this
> provision occurred.[14]

Moreover, international courts consistently maintain that the use of

evidence obtained by torture violates international law.[15]  The European

Court of Human Rights has held:

––––––––––––––––––––

[13] U.N. Comm. against Torture, *Concluding observations on the initial report of Niger*, 14, U.N. Doc. CAT/C/NER/CO/1 (Dec. 20, 2019); *see also* U.N. Comm. Against Torture, *Concluding observations on the third periodic report of Benin*, 9, U.N. Doc. CAT/C/BEN/CO/3 (June 4, 2019); U.N. Comm. Against Torture, *Concluding observations on the fourth periodic report of Mauritius*, 24, U.N. Doc. CAT/C/MUS/CO/4 (Dec. 22, 2017).

[14] U.N. Human Rights Comm., *General Comment No. 32: Article 14 (Right to equality before courts and tribunals and to a fair trial)*, 6, 41, U.N. Doc. CCPR/C/GC/32 (Aug. 23, 2007), at 6.

[15] *See, e.g.*, Amal Clooney & Philippa Webb, *The Right to a Fair Trial in International Law* (2020), at 650 n.330; *Cabrera García v. Mexico*, Preliminary Objection, Merits, Reparations and Costs, Inter-Am. Ct. H.R. (ser. C) No. 220, 165 (Nov. 26, 2010); *Egyptian Initiative for Personal Rights and Interights v. Egypt*, Communication 334/06; African Comm'n on Human & Peoples' Rights ["Afr. Comm'n H.P.R."], 212 (Mar. 1, 2011); U.N. Eighth United Nations Congress on the Prevention of Crimes & the Treatment of Offenders, *Guidelines on the Role of Prosecutors ("Havana Guidelines")*, art. 15, U.N. Doc. A/CONF.144/28/Rev.1 (1990).

> the admission of statements obtained as a result of torture or of other ill-treatment . . . to establish the relevant facts in criminal proceedings renders the proceedings as a whole unfair, irrespective of the probative value of the statements and irrespective of whether their use is decisive in securing the defendant's conviction.[16]

Similarly, the Inter-American Court of Human Rights has held that this exclusionary rule is a "prohibition on granting probative value not only to evidence obtained directly by coercion, but also to evidence derived from such action."[17]  The African human rights system, too, prohibits the use of evidence obtained by torture.[18]

Finally, the prohibition on the use of evidence obtained by torture applies to international criminal proceedings, as shown in the rules and

---

[16] *Kaçiu v. Albania*, App. No. 33192/07 & 33194/07, 117 Eur. Ct. H.R. (2013); *see also Petukhov v. Russia*, App. No. 17853/09 Eur. Ct. H.R. (2021); *Orazbayev and Others v. Russia*, App. No. 15367/07, 132 Eur. Ct. H.R. (2021); *Uspanov v. Russia*, App. No. 48053/06, 241 Eur. Ct. H.R. (2021); *Mansurov and Others v. Russia*, App. No. 4336/06, 241 Eur. Ct. H.R. (2021); *Bokhonko v. Georgia*, App. No. 6739/11, Eur. Ct. H.R. (2020); *Ćwik v. Poland*, App. No. 31454/10, 75 Eur. Ct. H.R. (2020); *Ibrahim and Others v. United Kingdom*, App. No. 50541/08, 254 Eur. Ct. H.R. (2016).

[17] *Cabrera García v. Mexico*, Inter-Am. Ct. H.R. (ser. C) No. 220, 167 (Nov. 26, 2010); *García Cruz y Sánchez Silvestre v. México*, Merits, Reparations and Costs, Inter-Am. Ct. H.R. (ser. C) No. 273, 58 (Nov. 26, 2013); *Omar Humberto Maldonado Vargas and Others v. Chile*, Merits, Reparations and Costs, Inter-Am. Ct. H.R. (ser. C) No. 300, 118 (Sept. 2, 2015).

[18] Afr. Comm'n H.P.R., *Principles and Guidelines on the Right to a Fair Trial and Legal Assistance in Africa*, Section N9(6)(d)(1) (2003).

jurisprudence of the International Criminal Court ("ICC") and other international criminal tribunals.[19]

Thus, just as the prohibition against torture is "one of the most fundamental standards of the international community,"[20] so too has the use of evidence obtained from torture been consistently prohibited under international law.  Simply put, the admission of torture-obtained evidence is "manifestly contrary . . . to the most basic international standards of a fair trial."[21]

---

[19] *See* Amal Alamuddin, "Collection of Evidence," in *Principles of Evidence in International Criminal Justice* (Karim A. Khan ed., 2010), at 280; Rome Statute of the Int'l Criminal Court art. 69, entered into force July 1, 2002, 2187 U.N.T.S. 90; Int'l Criminal Tribunal for the former Yugoslavia, *Rules of Procedure and Evidence*, entered into force Mar. 14, 1994, amendments adopted Jan. 8, 1996, Rule 95, U.N. Doc. IT/32/Rev.7 (1996); Int'l Criminal Tribunal for Rwanda, *Rules of Procedure and Evidence*, entered into force June 29, 1995, Rule 95, U.N. Doc. ITR/3/REV.1 (1995); Special Tribunal for Lebanon, *Rules of Procedure and Evidence*, adopted on Mar. 20, 2009, amended on Dec. 18, 2020, Rule 162, Doc. STL-BD-2009-01-Rev.11 (2020); Special Court for Sierra Leone, *Rules of Procedure and Evidence*, adopted on Jan. 16, 2002, amended on Oct. 20, 2020, Rule 95 (2020).  In the *Al Hassan* case, the ICC proceeded on the basis that torture had not been proven, which differs from the stipulation that the abuse of the petitioner in the *Al Nashiri* case met the legal definition of torture.  *Prosecutor v. Al Hassan*, ICC-01/12-01/18-1508, Second decision on requests related to the submission into evidence of Mr. Al Hassan's statements, ¶¶ 12, 44-45 (June 8, 2021).

[20] *Prosecutor v. Furundzija*, Case No. IT-95-17/1, Trial Chamber Judgment, 153-54 (Int'l Crim. Trib. for the Former Yugoslavia Dec. 10, 1998) (quoted with approval by the European Court of Human Rights in *Al-Adsani v. United Kingdom*, App. No. 35763/97, 30 Eur. Ct. H.R. (2001)).

[21] *Othman (Abu Qatada) v. United Kingdom*, App. No. 8139/09, 264, 267 Eur. Ct. H.R. (2012); *see also Al-Nashiri v. Romania*, App. No. 33234/12, 718 Eur. Ct. H.R. (2018); *Case of Husayn (Abu Zubaydah) v. Poland*, App. No. 7511/13, 554 Eur. Ct. H.R. (2015); *Al-Nashiri v. Poland*, App. No. 28761/11, 564 Eur. Ct. H.R. (2014); *Abdulkadyrov and Dakhtayev v. Russia*, Application no. 35061/04, § 80 Eur. Ct. H.R.

### 2.    International Law Prohibits the Use of Evidence Obtained by Torture at All Stages of a Proceeding, Including During Post-Trial and Sentencing

CAT Article 15 makes clear that states must "ensure that" any statement obtained by the use of torture "shall not be invoked as evidence *in any proceedings.*"[22]  Not just in some proceedings; not just during a trial on the merits; and not excepting post-trial and sentencing.  The prohibition is unequivocal.  It bars the use of evidence obtained by torture in "any" proceeding, at any time.  This prohibition is subject to one and only one exception:  the use of evidence "against a person accused of torture as evidence that the statement was made,"[23] which exists for the benefit of a survivor of torture.[24]

---

(2018); Principles on Effective Interviewing for Investigations and Information Gathering (May 2021), https://interviewingprinciples.com/ (Torture and other forms of coercion "lead to false confessions, to unfair trials and undermine the administration of justice").

[22] CAT, *supra* note 6, art. 15 (emphasis added).

[23] CAT, *supra* note 6, art. 15; Inter-American Convention to Prevent and Punish Torture, Dec. 9, 1985, 67 O.A.S.T.S., Art. 10; African Commission on Human and People's Rights, *Principles and Guidelines on the Right to a Fair Trial and Legal Assistance in Africa*, Principle F(l) (2003); African Commission on Human and Peoples' Rights, *Resolution on Guidelines and Measures for the Prohibition and Prevention of Torture, Cruel, Inhuman or Degrading Treatment or Punishment in Africa*, 32nd Session, Banjul, The Gambia, Guideline 29 (Oct. 17-23, 2002).

[24] *See Othman (Abu Qatada) v. United Kingdom*, App. No. 8139/09, 264-267 Eur. Ct. H.R. (2012).

The UN Committee Against Torture has consistently advised of the broad scope of the Article 15 exclusionary rule, such that "there is no doubt that the provision applies to any proceedings *regardless of whether they are of criminal, civil or administrative nature*."[25]  And this "absolute nature of the prohibition of torture . . . implies, consequently, an obligation for each State party to ascertain whether or not statements admitted as evidence in any proceedings for which it has jurisdiction . . . have been made as a result of torture."[26]  This obligation means that states "must carry the burden of proving that confessions were obtained without duress, intimidation, or inducements."[27]  A failure to fulfill this responsibility may "constitute a violation of the State's obligations under article 14."[28]

---

[25] Giuliana Monina, "Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Part I Substantive Articles, Art. 15 Non-Admissibility of Evidence Obtained by Torture," in *The United Nations Convention Against Torture And Its Optional Protocol:  A Commentary* 426 (Manfred Nowak, Moritz Birk, & Giuliana Monina, eds., 2019) (emphasis in original).

[26] *G.K. v. Switzerland*, Communication No. 219/2002, U.N. Doc. CAT/C/30/D/219/2002, 6.10 (U.N. Comm. Against Torture 2003); *see also Ramiro Ramírez Martínez et al v. Mexico*, Communication No. 500/2012, U.N. Doc. CAT/C/55/D/500/2012, 17.11 (U.N. Comm. Against Torture 2015); *Sarobe v. France*, Communication No. 675/2015, U.N. Doc. CAT/C/62/D/675/2015, 10.2 (U.N. Comm. Against Torture 2018).

[27] Interim report of the Special Rapporteur on torture and other cruel, inhuman or degrading treatment or punishment, U.N. Doc A/71/298 ¶ 98 (Aug. 5, 2016).

[28] CAT General Comment No. 3 ¶ 17.

The Committee Against Torture has held that Article 15 applies to any stage of the proceedings and that evidence obtained by torture "should never be permitted to reach the cognizance of the judges deciding the case, *in any legal procedure.*"[29]

The UN Special Rapporteur on Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment has explained that the exclusionary rule applies to "*any formal decision-making* by State officials based on *any type of information.*"[30]  The scope of the rule "should therefore be interpreted in good faith and applied by way of analogy to the collection, sharing, and receiving of information tainted by torture, including information obtained by other ill-treatment, even if not used in 'proceedings' as narrowly defined."[31]  Further, the UN Office of the High Commissioner for Human Rights has concluded that "the universal and

---

[29] U.N. Comm. Against Torture, *Summary Record of the First Part of the 354th Meeting*, 11, U.N. Doc CAT/C/SR/354 (November 18, 1998) (emphasis added).

[30] Méndez, *Report of the Special Rapporteur on torture and other cruel, inhuman or degrading treatment or punishment*, *supra* note 11, at 30 (emphasis added).

[31] Méndez, *Report of the Special Rapporteur on torture and other cruel, inhuman or degrading treatment or punishment*, *supra* note 11, at 74, 83(c); *see also* Juan E. Méndez (Special Rapporteur on torture and other cruel, inhuman or degrading treatment or punishment), *Report of the Special Rapporteur on torture and other cruel, inhuman or degrading treatment or punishment, Follow up report: Missions to the Republic of Tajikistan and Tunisia*, 75, U.N. Doc. A/HRC/28/68/Add.2 (Feb. 27, 2015), at ¶ 24.

non-derogable prohibition on torture and other inhuman or degrading

treatment or punishment is consequently *to be respected at all times,*

*without exception even in the direst of circumstances.*"[32]

    Domestic jurisdictions around the world, including the United

Kingdom,[33] Canada,[34] Australia,[35] New Zealand,[36] South Africa,[37] Hong

Kong,[38] and Singapore,[39] also apply the exclusionary rule to bar torture-

---

[32] U.N. Office of the High Commissioner for Human Rights in cooperation with the International Bar Association, *Human Rights in the Administration of Justice: A Manual on Human Rights for Judges, Prosecutors, and Lawyers*, U.N. Doc. HR/P/PT/9, 230 (2003) (emphasis in original).

[33] *A (FC) and others (FC) (Appellants) v. Secretary of State for the Home Department (Respondent) (2004)*, [2005] UKHL 71, 112 (House of Lords 2005); *Shagang Shipping Co. Ltd. v. HNA Grp. Ltd.*, [2020] UKSC 34 (Supreme Court of the United Kingdom 2020); *R. (Binyam Mohamed) v. Secretary of State for Foreign and Commonwealth Affairs (No. 1)*, [2008] EWHC 2048 (England and Wales High Court of Justice, 2008); *Ras Al Khaimah Inv. Auth. v. Azima*, [2021] EWCA Civ 349, 41 (England and Wales Court of Appeal 2021).

[34] *Boudreau v. The King*, [1949] S.C.R. 262, 269-270 (Can. 1949); *The Queen v. Fitton*, [1956] S.C.R. 958, 958 (Can. 1956); *Horvath v. The Queen*, [1979] 2 S.C.R. 376, 424-425 (Can. 1979); *Mahjoub v. Canada (Minister of Citizenship and Immigration)*, [2006] F.C. 1503, 26 (Fed. Ct. Can. 2006); *Harkat (Re)*, [2005] F.C. 393, 123 (Fed. Ct. Can. 2005); *France v. Diab*, [2014] ONCA 374, 234, 236-237 (Can. Ont. C.A. 2014).

[35] *Habib v. Nationwide News Pty. Ltd.*, [2010] NSWCA 34, 284, 266-267 (Austl. 2010).

[36] *R. v. Gregory John Alsford*, [2017] NZSC 42, 92 (N.Z. 2017).

[37] *Mthembu v. The State*, 2008 (2) SACR 407 (SCA), ¶ 32 (S. Afr. 2008); *Key v. Attorney-General, Cape Provision Division and Another*, 1996 (4) SA 187 (CC), ¶ 13 (S. Afr. 1996); S. African Human Rights Comm'n, Presentation to the Portfolio Committee on Correction Services: Torture in Correctional Centres in South Africa (2011).

[38] *Ubamaka Edward Wilson v. Secretary for Security and Another*, [2012] HKCFA 87, ¶ 7 (Court of Final Appeal of the Hong Kong Special Administrative Region 2012).

[39] *Yong Vui Kong v. Public Prosecutor*, [2015] 2 SLR 1129, 64 (Sing. 2015).

tainted evidence in all types of proceedings, including civil cases, confirming the categorical nature of the rule and its application to any phase of a case.  In sum, "torture is torture whoever does it, judicial proceedings are judicial proceedings, whatever their purpose – the former can never be admissible in the latter."[40]

Based on the record in this matter, there is ample basis to believe Petitioner's statements were obtained by torture and CIDT.  At minimum, the government bears the burden of proving they were not.  Conspicuously, the government has not disputed that the statements violate Section 948r(a)'s prohibition on the use of evidence obtained from torture.  There is thus a strong likelihood that the CMCR considered torture-obtained evidence when sentencing Mr. Al-Bahlul.[41]  Accordingly, as amici explain in Part II, *infra*, the government should join in Petitioner's request for resentencing, because – as government counsel has said repeatedly over the

-----

[40] Alvaro Gil-Robles (Council of Europe Commissioner for Human Rights), *Report by the Council of Europe Commissioner for Human Rights on His Visit to the United Kingdom in November 2004*, Doc. CommDH(2005)6, ¶ 27 (June 8, 2005) (quoted in *A (FC) and others (FC) (Appellants) v. Secretary of State for the Home Department (Respondent) (2004)*, [2005] UKHL 71 at 35 (House of Lords 2005)).

[41] By itself, the failure to investigate Petitioner's allegations, and determine whether statement evidence in the record violated the prohibition on using torture-obtained evidence would violate the United States' obligations under CAT.  CAT, *supra* note 6, art. 12 ("Each State Party shall ensure that its competent authorities proceed to a prompt and impartial investigation, wherever there is reasonable ground to believe that an act of torture has been committed in any territory under its jurisdiction.").

last year – the United States agrees that the prohibition of the use of

evidence obtained by torture applies to *any* military commission

proceeding.  The government has an affirmative duty to ensure that the

prohibition has not been violated.

## II.    UNDER UNITED STATES LAW, THE USE OF EVIDENCE OBTAINED BY TORTURE IS CATEGORICALLY PROHIBITED

Consistent with international law, United States law clearly prohibits

the use of statements obtained by torture in a military commission at all

stages of a case, for any purpose, except against a person accused of torture.

*See* 10 U.S.C. § 948r(a) ("Section 948r(a)"); *see also Brown v. Mississippi*,

297 U.S. 278, 286-87 (1936) (the permissive use of evidence extracted

through torture is not "mere error" or a "mere question of state practice,"

but "a wrong so fundamental that it made the whole proceeding a mere

pretense of a trial").  This prohibition is also essential to satisfy the United

States' obligations under CAT Article 15.[42]

_____

[42] Although the Senate resolution of advice and consent to CAT declared Article 15 non self-executing, Resolution of Ratification: Senate Consideration of Treaty Document 100-20 (May 20, 1988), the Senate Report declared that "the majority of the obligations to be undertaken by the United States pursuant to the Convention are already covered by existing law," and that the non-self-execution declaration would clarify "that further implementation of the Convention will be through implementing legislation."  Comm. on Foreign Relations, *Convention Against Torture and Other Cruel, Inhuman Or Degrading Treatment Or Punishment*, S. Exec. Rep. No. 101-30, at 10 (1990).  As explained *infra*, U.S. law has long prohibited the use of evidence obtained

Not just torture itself but also the use of its fruits in a legal process under the aegis of the Constitution and laws of the United States "offends [a] principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Brown*, 297 U.S. at 285 (internal quotation marks omitted); *see* David Luban, *Torture, Power, and Law* 44 (2014) (observing that traditionally, torture has been "incompatible with American values.  Our Bill of Rights forbids cruel and unusual punishment . . . .  Americans and our government have historically condemned states that torture; we have granted asylum or refuge to those who fear it.").  An adjudicative body's failure to exclude such evidence would "sanction the brutal conduct" that led to its production and in turn "afford brutality the cloak of law." *Rochin v. California*, 342 U.S. 165, 173-74 (1952).  Use of evidence obtained from torture would draw the United States on par with those nations and governments against whom we have long and proudly distinguished ourselves. *Ashcraft v. Tennessee*, 322 U.S. 143, 155 (1944); *Chambers v. Florida*, 309 U.S. 227, 237-38 (1940).  And it would reward torturers and incentivize torture.

---

by torture.  In any event, the United States further codified the prohibition through Section 948r.

Admission of such evidence is also barred in civilian courts by longstanding precedent as a "'clear denial of due process.'"[43]  The "Fourteenth Amendment forbids the use of involuntary confessions," the Supreme Court has explained, not only because of their "probable unreliability" but also because that use violates "important human values."[44]  This Due Process requirement demands that the court review challenged statements using "fully adequate [procedures] to insure a reliable and clear-cut determination of the voluntariness of the confession, including the resolution of disputed facts."[45]  The government bears the burden of proving, by a preponderance of the evidence, that it has not violated "the right of an individual, entirely apart from his guilt or innocence, not to be compelled to condemn himself by his own utterances."[46]  Here, Respondent has failed to meet that burden.

---

[43] *Chambers*, 309 U.S. at 238 (quoting *Brown v. Mississippi*, 297 U.S. 278, 286 (1936)).

[44] *Jackson v. Denno*, 378 U.S. 368, 385-86 (1964).

[45] *Id.* at 391.

[46] *Lego v. Twomey*, 404 U.S. 477, 485-89 (1972); *Colorado v. Connelly,* 479 U.S. 157, 168 (1986) (reaffirming *Lego*); *Missouri v. Seibert*, 542 U.S. 600, 609 n.1 (2004) ("[T]he burden of showing admissibility rests, of course, on the prosecution [by a preponderance of the evidence].").

"To meet its burden, the government must demonstrate that each of [the] confessions was 'the product of an essentially free and unconstrained choice.'" *Schneckloth v. Bustamonte,* 412 U.S. 218, 225 (1973).  *See generally United States v. Karake*, 443 F. Supp. 2d 8, 49-54 (D.D.C. 2006) (summarizing law of inadmissibility of

Accordingly, by statute, the use of evidence obtained by torture is expressly prohibited. The MCA implements the prohibition on using torture-obtained statements through Section 948r(a):

> No statement obtained by the use of torture or by cruel, inhuman, or degrading treatment (as defined by section 1003 of the Detainee Treatment Act of 2005 (42 U.S.C. 2000dd)), whether or not under color of law, shall be admissible in a military commission under this chapter, except against a person accused of torture or such treatment as evidence that the statement was made.

10 U.S.C. § 948r(a).

By its plain terms, Section 948r(a) admits of no exception and applies at all stages of the proceedings—pre- and post-trial included. After briefly equivocating on the scope of Section 948r(a), though not with respect to its application at sentencing, the U.S. government has explicitly and repeatedly agreed that the provision applies categorically to all legal proceedings.

For example, in a January 31, 2022 filing in *U.S. v. Al-Nashiri*, No. 21-1208 (D.C. Cir.), the government told this Court:

> The government recognizes that torture is abhorrent and unlawful, and unequivocally adheres to humane treatment standards for all detainees. See Executive

---

statements obtained by torture and concluding that statements obtained through psychological and physical abuse were involuntary and inadmissible) (Huvelle, J.).

- 21 -

Order 13491.  In the absence of direct authority interpreting Section 948r(a), the government took the position below that Section 948r(a)'s prohibition on admission of statements obtained through torture or cruel, inhuman, or degrading treatment applies only to the trial and sentencing phases of a military commission and not to pretrial proceedings.  Since that filing, **the government has reconsidered its interpretation of Section 948r(a) and, as a result of that review, has concluded that Section 948r(a) applies to all stages of a military commission case, including pretrial proceedings**.  **In accordance with that conclusion, the government will not seek admission, at any stage of the proceedings, of any of petitioner's statements while he was in CIA custody.**

*See* Document No. 1933124, Brief of the United States in Opposition, *In re: Abd Al-Rahim Hussein Muhammed Al-Nashiri*, No. 21-1208 (D.C. Cir. Jan. 31, 2022), at 3-4 (emphasis added).

The Government reiterated that position in a May 20, 2022 Rule 28(j) letter to this Court:

Under Section 948r(a), statements obtained by the use of torture, or by cruel, inhuman, or degrading treatment, are inadmissible regardless of whether the defendant or another person made the statement. **That is the position of the United States, and we have recently made clear that this bar applies at any stage of the proceedings, not just at trial.**

- 22 -

*See* Document No. 1947508, Letter from J. Palmer to M. Langer, *In re: Abd Al-Rahim Hussein Muhammed Al-Nashiri*, No. 21-1208, Response to Letter under Fed. R. App. P. 28(j), at 1 (emphasis added).

The government further assured Congress of the same in a July 18, 2022 letter to the Chairman of the United States Senate Committee on the Judiciary, Sen. Dick Durbin (D-Illinois), and the Chairman of the United States Senate Committee on Appropriations, Sen. Patrick Leahy (D-Vt.):

> The government has committed not to seek admission of statements within the scope of 10 U.S.C. § 948r(a) at any stage of a military commission proceeding against any party.  Most recently, on May 20, 2022, the government reiterated in federal court its ongoing commitment to this position, stating, "[u]nder Section 948r(a), statements obtained by the use of torture, or by cruel, inhuman or degrading treatment, are inadmissible regardless of whether the defendant or another person made the statement.  This is the position of the United States and we have recently made clear that this bar applies at any stage of the proceedings, not just at trial." *In re: Abd Al-Rahim Hussein Muhammed Al-Nashiri*, No. 21-1208, Response to Letter under Federal R. App. P. 28j (Response) at 1.

*See* Letter dated July 18, 2022, from P. Hyun, Acting Assistant Attorney General, Office of Legislative Affairs, Dep't of Justice; T. Mancinelli, Acting Assistant Secretary for Legislative Affairs, Dep't of Defense; and

- 23 -

N. Durakoglu, Assistant Secretary, Bureau of Legislative Affairs, Dep't of
State to Sens. R. Durbin and P. Leahy, at 1,
https://www.judiciary.senate.gov/imo/media/doc/2022.07.18-OUT-
Durbin-Leahy-Military%20Mistreatment.pdf.

The government's multiple representations, to the legislative as well
as judicial branches, that evidence obtained by torture is inadmissible in
any military commission proceeding are consistent with the United States'
statements to the international community regarding its interpretation of
the MCA.  For example, in both its 2021 and 2013 submissions to the UN
Commission against Torture, the United States specifically confirmed that
the MCA "prohibits admission of any statement obtained by the use of
torture or by cruel, inhuman, or degrading treatment," and apart from use
against a person accused of torture, "[n]o other exception to this
prohibition on admissibility . . . is permitted."[47]

---

[47] Sixth Periodic Report, *supra* note 9, ¶ 146; *see also* U.S. Dep't of State, Periodic
Report of the United States of America to the United Nations Committee Against
Torture ¶ 156 (Aug. 5, 2013), https://2009-
2017.state.gov/documents/organization/213267.pdf.

## CONCLUSION

For the foregoing reasons – to ensure that Petitioner's imprisonment is not a result of a violation of the prohibition on torture and its exclusionary rule – if the Court does not vacate the judgment below on other grounds, it should remand for resentencing. Because the United States has clearly and repeatedly recognized that the prohibition on using torture obtained evidence is categorical and applies at all stages of a military commission case, it should join in this aspect of Petitioner's request for relief.

Dated: November 28, 2022

Respectfully submitted,

*/s/John S. Summers*

John S. Summers
Andrew M. Erdlen
Alexander J. Egerváry
Michael J. Masciandaro
HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER
One Logan Square, 27th Floor
Philadelphia, PA 19103
(215) 568-6200
jsummers@hangley.com
aerdlen@hangley.com
aegervary@hangley.com
mmasciandaro@hangley.com

*Counsel for Amici*

- 25 -

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Fed. R. App. P. 29(a)(5), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this brief contains 5,927 words.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft Office 365 in 14-point Georgia.

*/s/John S. Summers*
John S. Summers

## CERTIFICATE OF SERVICE

I, John S. Summers, hereby certify that on November 28, 2022, I caused a true and correct copy of the foregoing Brief of The Center For Victims of Torture, Claire Finkelstein, David Glazier, Karen J. Greenberg, Jonathan Hafetz, Lisa Hajjar, Katherine Hawkins, Gail Helt, Sanford V. Levinson, David Luban, Elisa Massimino, Juan Méndez, Alberto Mora, Manfred Nowak, John T. Parry, Gabor Rona, and Philippa Webb as Amici Curiae in Support of Petitioner to be served on counsel of record by electronic filing on the Court's ECF system:

Danielle Sue Tarin
Joseph Francis Palmer
U.S. Department of Justice
National Security Division
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001
Email: danielle.tarin@usdoj.gov
Email: joseph.palmer@usdoj.gov

*Counsel for Respondent*

Michel Paradis
LT Jennifer Joseph, JAGC, USN
Aaron Shepard
Military Commission Defense Organization
1620 Defense Pentagon
Washington, DC 20301-1620
michel.d.paradis.civ@mail.mil

MAJ Todd E. Pierce, JA, USA (Ret.)
Univ. of Minnesota Human Rights Center
Mondale Hall, N-120
229-19th Avenue South
Minneapolis, MN 55455

*Counsel for Petitioner*

*/s/John S. Summers*
John S. Summers